MARTIN OSTER, Respondent, v. CITY OF JEFFERSON Appellant.

Kansas City Court of Appeals, April 9, 1894.

1. **Municipal Corporations:** THIRD CLASS CITIES: ACT OF 1887: STREET IMPROVEMENT: LEGISLATIVE POWERS. Under the act of March 30, 1887, Laws of Missouri, 1887, p. 65, *et seq.*, cities of the third class have no power to issue special tax bills to pay for the paving and macadamizing of streets, but should raise the necessary funds to pay for the improvement by assessments against the property fronting on the street so improved; and if it fails to do so, the city itself must be held to pay the agreed price of the work; and there is no room for the application of the rule that a municipality will not be held for the nonexercise of discretionary powers of a legislative character.

2. ————: CONTRACT UNDER ACT OF 1887: ACT OF 1889. A contract entered into by a city of the third class with a contractor for street improvements under the act of 1887, must be construed and performed under the provisions of that act and the ordinances in force, and not under the provisions of the act of 1889 and ordinances passed subsequent to the making of the contract.

3. ————: PUBLIC IMPROVEMENTS: INVALID TAX BILLS. Though a contractor agrees to take his pay for a public improvement in special tax bills, if the municipality has no power to issue such tax bills, the contractor is entitled to compensation, and may recover a general judgment against the city, unless its charter expressly protects it from liability for such work.

*Appeal from the Cole Circuit Court.*—HON. D. W. SHACKLEFORD, Judge.

AFFIRMED.

*Conrad Walldecker* and *Silver & Brown* for appellant.

(1) "It is a principle universally declared and admitted that a municipal corporation can levy no taxes, general or special, upon the inhabitants or their

property, unless the power is plainly and unmistakably conferred." 2 Dillon, Mun. Corp. [4 Ed.], sec. 763. (2) And a city can exercise its powers only in the manner prescribed by the creating act. *Rumsey v. Schell City*, 21 Mo. App. 175; *Thrush v. Cameron*, 21 Mo. App. 394; *Knox City v. Thompson*, 19 Mo. App. 523. (3) The powers of municipalities are prescribed by their charters, and their charters provide the means of exercising those powers and the creation of specific means excludes others. *Mayor v. Ray*, 19 Wallace, p. 475; *Argenti v. San Francisco*, 16 Cal. 482, 483. (4) The street improvement sought to be recovered for in this case was made under the charter of the Legislature of 1887, section 31, *et seq.* (Laws, pp. 70, 71), which provides for compensation in special tax bills. The provisions of the act are restrictive and exclusive. *Expressio unius exclusio alterius* is a familiar principle of the law. *Maguire v. Association*, 62 Mo. 344; *Ex parte Snyder*, 64 Mo. 58; *State v. Jackson*, 95 Mo. 657; *Binde v. Klinge*, 30 Mo. App. 288; *Hemelreich v. Carlos*, 24 Mo. App. 273. (5) A grant of power to a city to impose a special tax assessment for local improvements confers no power to accomplish the same purpose by a general tax. *Webster v. People, etc.,* 98 Ill. 343; *Dubuque v. Railroad,* 47 Iowa, 201; *City of Clinton v. Henry County*, 115 Mo. 557; *Reock v. City*, 33 N. Y. Law, 129; *Fowle v. City*, 3 Peters (U. S.) 398. (6) Inasmuch as the city, if compelled to pay for this work sued for, could not reimburse itself by an assessment, it is not liable in this action. *Town of Tipton v. Jones,* 77 Ind. 307. (7) Where the statute creates a new right, as in the case of a local improvement, and prescribes a remedy, the statutory one is exclusive. *City of Clinton v. Henry County, supra.* (8) A city is not liable for the nonexercise or defective exercise of its public or legislative powers. *Keating v. Kansas City,*

84 Mo. 418; *McCormick v. Patchin*, 53 Mo. 33; *Saxon v. St. Joseph*, 60 Mo. 153; *Cheeney v. Brookfield*, 60 Mo. 53; *Moore v. City*, 103 Mo. 473. If the tax bills in this case are invalid, it is because of the failure of the city council of defendant to pass needful and appropriate legislation, and such being the case the city is not responsible in this action. (9) The amended tax bills are valid and the plaintiff can recover thereon, and such being the case, the plaintiff can not prevail in this suit. The city charter itself and the ordinances passed thereunder conferred the necessary authority for the issuance of the tax bills. Laws of Missouri, 70 and 71; City Ordinances. The original tax bills were open to amendment. *Riley v. Stewart*, 50 Mo. App. 594; Laws of 1887, p. 71, sec. 37.

*Geo. T. White* and *J. R. Edwards* and *L. C. Krauthoff* of counsel, for respondent.

(1) The petition states a cause of action. 44 Mo. 482, and authorities there cited. *Wetmore v. Campbell*, 2 Sandford, 341; same 350, 351. The city is liable, though the work was to be paid for by special assessment. *Kearney v. Covington*, 1 Metc. (Ky.) 339; *Maher v. City of Chicago*, 38 Ill. 266; *Reiley v. City of Albany*, 112 New York Rep. (App.) 30; 89 N. Y. (App.) 189; *Bank v. The State of Iowa*, 69 Iowa, 24; *Schofield & Cavin v. The City of Council Bluffs*, 68 Iowa, 595; *Bucroft v. The City of Council Bluffs*, 63 Iowa, 646. The fact that the plaintiff did not proceed against the defendant to compel the issue of other tax bills does not prevent his recovery. *City of Atchison v. Byrnes*, 22 Kan. 65, and authorities cited; *Bank v. City of Portland*, Supreme court of Oregon, and authorities cited, 33 Pac. Rep. 532; *Hitchcock v. Galveston*, 96 U. S. 341; *Mor-*

*gan v. Dubuque*, 28 Iowa, 575; Act, 1887, p. 76, sec. 59. (2) The original as well as the amended tax bills were utterly void. *City of Jefferson v. Whipple*, 71 Mo. Rep. 519. (3) The statute under which these special tax bills are issued especially provides that the assessment shall be made on each block separately. These tax bills failed in this particular and for this reason are void. Act, 1887, p. 70, sec. 31; *City of Hannibal v. Richards*, 35 Mo. App. 15; *Kemper v. King*, 11 Mo. App. 584; *Christian v. Tossig*, 8 Mo. App. 602. These proceedings are proceedings *in invitum* purely statutory and are therefore strictly construed. *Leach v. Corgill*, 60 Mo. 316; *Keiley v. Oppenheimer*, 55 Mo. 374.

GILL, J.—The plaintiff sued the defendant city for the contract price of doing certain macadamizing, curbing and guttering on a portion of High street. On trial below by the court, sitting as a jury, the plaintiff had judgment, and defendant appealed.

The substantial facts appear in the following agreed stipulation: "That the plaintiff, Oster, and defendant, the city of Jefferson (a city of the third class) executed and entered into a written contract, on or about August 15, 1887, for the street improvement mentioned in the pleadings; that said contract was made under the law of Missouri, with reference to cities of the third class, approved March 30, 1887 (Laws of Missouri, p. 65, and following); that said contract was entered into and executed in conformity with said act of 1887, and contained the provisions and terms set out in plaintiff's petition, and it was further agreed by the parties to this suit that plaintiff performed the work mentioned in the contract and petition at the prices stated therein, and that plaintiff presented his account for said work to the defendant's city council and demanded payment in money therefor,

which account defendant refused to pay and has ever since refused to pay otherwise than in the special tax bills as claimed by it in the evidence; that said street improvement was made by plaintiff as stated in the petition; that the proposed contract was duly advertised as required by law, and the work after completion was duly accepted by the city council. It is also admitted that the original contract between plaintiff and defendant is lost and can not be produced in evidence."

It seems that after the work was completed the city clerk made out and delivered to the contractor certain alleged tax bills purporting to charge the property abutting on the street; that these were admittedly invalid and worthless, and that on their return to the city clerk an effort was made to amend these and others were issued; but the second lot too were objected to and returned as worthless. The city authorities did nothing further. Plaintiff demanded payment from the city, which was refused, and this action was brought in April, 1891.

I. The substance of the city's claim is, that by the execution and delivery (or offer to deliver) of the special tax bills to the plaintiff contractor it had complied with its obligations under the law and can not be held further. In other words, it is contended that by the terms of its charter the city, on the completion of the macadamizing, was only required in payment to make and deliver special tax bills to the contractor; that this was the mode pointed out by the statute, which under the rule of *expressio unius, etc.*, is exclusive of all others.

In answer to this it is sufficient to say that no such mode of paying for such street improvements was provided in the statute in force at the time the contract was made and this work was done. At that time the

law for the government of cities of the third class (to which Jefferson City belongs) was found in the act approved March 30, 1887, Laws 1887, p. 65). Under section 31 of that statute the defendant city was "authorized and empowered to enact ordinances for the following purposes * * *; *first*, to levy and collect taxes for general revenue purposes, etc., * * *; *second*, to open and improve streets, avenues and alleys and make sidewalks, build bridges, culverts and sewers within the city; *and for the purpose of paying for the same* shall have power to make assessments in the following manner, to wit: *first*, for opening, widening and bringing to gráde all streets * * * and for building of bridges, culverts and public sewers * * * the assessment shall be made on all the taxable property within the limits of the city * * *; *second*, for making and repairing sidewalks the assessment shall be made on all lots, etc., * * * abutting on the improvements according to the front foot thereof; *third*, for paving, macadamizing, curbing and guttering all streets * * * after said streets, etc., have been first brought to grade, as provided in the first division of the section, * * * the assessment shall be made for each block separately on all lots and pieces of ground on either side of such street, etc., etc., in proportion to the front foot."

Section 32 declares that the assessments made in pursuance of these last provisions "shall be known as special assessments for improvements and shall be levied and collected as a special tax, and shall be paid in the manner provided by ordinance. Said special tax may bear interest after thirty days from the date of issue and presentation at the rate of ten per cent. annum." Section 33 provides merely for advisory estimates of proposed work to be made; and then follows section 34 providing that when the council may deem it nec-

essary to macadamize the street, etc., notice by publication shall be given, and if a majority of the resident property owners on the street shall not protest, "then the council shall have power to cause such improvements to be made and to contract therefor, and to levy the tax herein provided."

The foregoing include every provision of the charter laws of cities of the third class which in any way deal with the matter now in hand, and which were in force when this work was done. And it will be readily seen that there is an utter absence of authority in the council to issue special tax bills to the contractor in payment for such street improvements. That *any* tax bills are to be made at all is only inferentially stated, and that only to be gathered from the clause of section 32, reading: "Said special tax may bear interest after thirty days from the date of issue and presentation." The scheme provided for in this statute seems to be quite different from that assumed by counsel. First, power is given the city council to open and improve streets; and then "for the purpose of paying for the same" authority is given to raise the necessary funds in this way, to wit: for opening, widening or bringing to grade all streets, the city shall levy and collect a tax on all the taxable property within the city, but when it is intended to further improve said streets by paving or macadamizing, then the necessary fund *to pay for the same* shall be raised by assessments against the property fronting on the streets so improved. The rule is the same whether the city seeks to open a new street, or whether it seeks to improve one already acquired. In both cases the city in its corporate capacity must raise the funds necessary to pay therefor, in the one by assessing and collecting a tax on all the property within the limits of the municipality, and in the other case (that is for

macadamizing the street) by levying and collecting specially from the land abutting on the improved thoroughfare. There is no provision in this law of 1887, which we have been able to find, that authorizes the issuance of special tax bills to the contractor doing the work or that limits the liability of the city to the mere execution and delivery of such unauthorized tax bills. But under the amendments of 1889 special tax bills are provided for; that they shall be executed and delivered to the contractor; shall constitute a lien against the property named therein, and that such tax bills shall be delivered to said contractor in payment for his work, etc. See secs. 1495 to 1500 inclusive, R. S. 1889. This amendment of the defendant's charter has, however, no place in this controversy since the law was thus changed long after the rights of this plaintiff had become fixed under the prior act. We must measure the rights of the parties to this cause by the statute as it existed in 1887. We construe the contract between plaintiff and defendant as though the charter of 1887 was written therein and made a part thereof. And so understanding the obligations of the parties, the right of the plaintiff to recover for the work done is clear. He agreed with the defendant city for a specified price to macadamize a certain street according to certain plans and specifications. It is admitted that he did this, and completed his work in the fall of 1887 and to the entire satisfaction of the defendant. For this the city is under a legal obligation to compensate the plaintiff. To procure a fund for this purpose the municipality was authorized to assess and collect the necessary amount from abutting property owners. That it has failed to do so is no fault of the plaintiff; and to deny plaintiff's right of compensation because of the faulty inaction of defendant's officers is neither law nor justice. The most

favorable light in which this case can be viewed for defendant is, that it employed plaintiff to improve this street with the understanding that such work was to be paid for out of a fund to be collected from the owners of adjoining lots. The further facts then appearing that the work was done as agreed, but that the city failed or declined to make any effort within a reasonable time to assess and collect from the abutting owners and thereby raise the money to pay plaintiff, the city itself must be held to pay the agreed price of the work. *Morgan v. City of Dubuque*, 28 Iowa, 575; *Kearney v. City of Covington*, 1 Met. (Ky.) 339; *City of Atchison v. Byrnes*, 22 Kan. 65; *City of Leavenworth v. Mills*, 6 Kan. 288; *Reilly v. City of Albany*, 112 N. Y. 30; *Bank v. City of Portland*, 33 Pac. Rep. 532.

There is no room here for the application of the rule that a municipal corporation will not be held in damages "for the nonexercise of, or for the manner in which in good faith it exercises discretionary powers of a public or legislative character (2 Dill. Mun. Corp., sec. 949) which the defendant invokes. The complaint here is not that of a failure to legislate, but rather a *failure to comply with a contract* entered into with the plaintiff. Will it be claimed that a municipal corporation can escape paying its obligations, because, in order to do so, an ordinance appropriating the money is necessary, and that nobody has a right to complain of the failure to pass the ordinance?

The ordinance passed by the defendant's counsel subsequent to the execution of the contract with plaintiff, and after the completion of the work thereunder, can have no bearing on this case. As already said, the plaintiff's rights were fixed by the law and the ordinances as they stood when the contract was made.

II. Conceding, however, that plaintiff agreed to macadamize High street and receive in payment

therefor special tax bills against the abutting property, and yet under the authority of *Fisher v. City of St. Louis*, 44 Mo. 482, the judgment here is for the right party and must be affirmed. In that case Fisher contracted with the city of St. Louis to fill up certain ponds within the city and agreed "that the work should be paid for in special tax bills assessed against the owner or owners of the property where the work was done, and that the delivery of such tax bills to the contractor should be in full payment for such work." The plaintiff did the work and received in payment the tax bills, which proved to be invalid and worthless, having been issued without competent legal authority." The plaintiff was permitted to recover a general judgment against the city for the contract price. "We think," says the supreme court, "the action well brought. The plaintiff had rendered the stipulated service, and was entitled to compensation. If he had not been paid, it was his right to sue for the value of the work." This decision has never to our knowledge been overruled, and hence we are bound by it. *Keating v. City of Kansas*, 84 Mo. 415, in no sense conflicts with *Fisher v. St. Louis, supra.* It rather tends to emphasize the ruling already made. Keating sued the city for the value of certain street grading, after a futile effort to charge the abutting property. His right to recover was denied, and the decision was based on the charter provision that "all ordinances and contracts for such work shall specify how the work shall be paid for; and in case payment is to be made in special tax bills, the city shall in no event or in any manner whatever be liable for or on account of the work." The course of legislation since the decision of the *Fisher case* has been almost uniformly after the manner of the Kansas City charter exempting the city from this secondary liability, because it was con-

ceded that without such restrictions the municipalities would be held as guarantors to the validity of such special assessments.

The judgment of the circuit court is affirmed. All concur.