## In re Paseo.

Kansas City Court of Appeals, February 6, 1899.

**Eminent Domain**: TITLE TO CONDEMNED PROPERTY: LIEN FOR SPECIAL IMPROVEMENTS: KANSAS CITY CHARTER.   While under the charter of Kansas City title to condemned real estate remains in the owner until the damages are paid, yet the divestiture on payment relates to the date of the judgment confirming the verdict of the jury and special improvements between the date of the verdict and the date of the payment form no part of the value of the land under the assessment of damages, and the tax bills therefor did not constitute a lien before the judgment of condemnation and can not be recouped out of the damages.

*Appeal from the Jackson Circuit Court.*—HON. E. P. GATES, Judge.

AFFIRMED.

Amos H. Kagy and J. H. Bremermann for appellant.

It is difficult to see how there can be contention about this matter; the facts are undisputed and the law is in plain print. Unless the title to the Scarritt property was divested out of the Scarritts, November 14, 1896, at the time of the judgment upon the verdict, then the tax bills became and were a lien thereon, December 16, 1896, and April 1, 1897, respectively. Kansas City v. Ward, 134 Mo. 172. Even in railway condemnations it is held that until the assessed damages are paid by the company to the landowner the title continues in him. Green v. Railway, 82 Mo. 657. Suppose this real estate had been improved, who would have been entitled to the rents and profits up to the time the city paid the money and took possession? Clearly not the city.

Scarritt, Vaughan, Griffith & Jones for respondents.

(1) The tax bills on which the appellants base their claim were not issued and delivered to the contractor until long after the confirmation of the verdict of the jury assessing damages, and the lien of said bills could not attach to the land, if at all, until they were receipted for by the contractor and delivered to him. Charter and Rev. Ord. of K. C., 1898, art. 9, sec. 18, p. 153; Folks v. Yost, 54 Mo. App. 55; Mc-Quiddy v. Gates, 69 Mo. App. 156. (2) The lien of the condemnation proceedings, however, by which respondents' property was taken from them, took effect on the date of the approval of the ordinance to condemn, November 14, 1895. Charter & Rev. Ord. of K. C., 1898, art. 10, sec. 11, p. 173; Charter & Rev. Ord. of K. C., 1898, art. 10, sec. 20, p. 181; Barnhart v. Hughes, 46 Mo. App. 318. (3) In the condemnation proceedings instituted by Kansas City for the purpose of acquiring parks the value of property taken is required to be determined as of the time of the trial or assessment. Charter and Rev. Ord. of K. C. 1898, art. 10,

secs. 13, 14, 15, 16, 17 and 18, pp. 175 to 180 inclusive, and sec. 28, p. 187; Railroad v. Townsite Co., 103 Mo. 451; Doyle v. Railroad, 113 Mo. 280; Lewis on Em. Dom., sec. 499. (4) The Scarritt land which was taken in the condemnation proceedings was, at the time the lien of appellant's tax bills attached thereto, virtually the property of the city. Plum v. Kansas City, 101 Mo. 525; Martin v. St. Louis, 139 Mo. 259; Lewis on Em. Dom., sec. 499.

ELLISON, J.—E. L. and W. C. Scarritt are interpleaders claiming the sum of $600 held by Kansas City, Missouri, for whoever may be entitled thereto. On the other hand, Michael Ross claims a part of this sum and J. R. Childers the balance. The circuit court awarded the whole sum to the Scarritts and the other interpleaders appeal.

The record discloses that on and prior to November 15, 1895, the Scarritts were the owners of certain real estate fronting on Fifteenth street in Kansas City, Missouri. That on that day an ordinance of said city was passed

STATEMENT.     and approved establishing a park, known as the Paseo, and providing for condemnation proceedings, this realty being a part of the land proposed to be taken. On September 26, 1896, the condemnation jury rendered a verdict assessing the value of this land at $12,610 and judgment was rendered thereon on the fourteenth day of November, 1896, though, the money not being then paid, the final decree vesting the title in the city was, it seems, not entered until afterwards.

The city learning of the claims of Ross and Childers, paid $12,010 to the Scarritts and withheld the $600 now in dispute that the courts might determine to whom it should be paid.

The claims of Ross and Childers arise in this way: The ordinance by which the paving was ordered was passed October 16, 1895, about one month prior to the date of the condemnation ordinance; and the ordinance by which the curbing

was ordered was passed November 23, 1895, being nine days after the condemnation ordinance.   The tax bill for the paving was issued and became a lien December 16, 1896, and the tax bill for the curbing was issued and became a lien April 1, 1897.   It will be noticed that the ordinance for one of the improvements was passed before and the other after the condemnation ordinance, but that both tax bills were issued and therefore could only become liens after the condemnation proceeding had culminated in a verdict assessing the damages and judgment of condemnation thereon.

The Scarritts contend that special taxes for paving and curbing are based on the improvement to the abutting property and that at the date of the ordinance for condemning their property and at the date of the assessment of damages there was no improvement in the way of paving or curbing; that such improvement came into existence afterwards and therefore could not have formed a part of the damages awarded to them. ·

On the other hand, Ross and Childers contend that, while the improvements may not have been made or their tax bills issued when the damages were assessed and awarded, yet that the Scarritts were still owners of the property, since the damages assessed had not been paid over to them, and were not until after the improvements were made and the tax bills were issued; that the Scarritts thus being the owners of the property at date of the issuance of the tax bills, they should only receive the damages assessed less the amount of the tax bills.

It is true that by the provisions of the charter of Kansas City the title to real estate condemned does not become divested out of the owner until the damages have been paid him.   Art. 10, secs. 17 and 28, Charter.   But when the money is paid the divestiture relates back to the date of the judgment confirming the verdict of the jury assessing the damages.   Lewis on Eminent Dom.,

EMINENT domain: title to condemned property: lien for special improvements: Kansas City charter.

sec. 499. He can not sell the property. The city has the paramount right. His possession is only permissive, subject to be terminated upon the payment of the damages assessed. Martin v. St. Louis, 139 Mo. 246; Lewis on Eminent Dom., sec. 499. The title is, in reality, suffered to be retained by the owner in the nature of a security for the payment of the damages assessed.

We therefore hold that as the improvements upon which these tax bills are based formed no part of the value of the land at the time that value was assessed, and as the tax bills impose no personal liability, and did not become a lien on the land before the judgment of condemnation, the interpleaders Ross and Childers have no right to the money in question and the judgment will be affirmed. All concur.