MUNICIPAL SECURITIES CORPORATION v.
KANSAS CITY, Appellant.

**In Banc, June 1, 1915.**

1. **APPELLATE JURISDICTION: U. S. Constitution.** If the Four-
teenth Amendment to the Constitution of the United States is
pleaded and invoked by plaintiff, and is contended to affect the
rights of the parties, appellate jurisdiction of an appeal from a
judgment for plaintiff is in the Supreme Court, although the
amount of money in dispute is less than $7500.

2. **APPEAL: Affidavit and Motion for New Trial.** Although the
abstract of the record proper does not contain either the affi-
davit for an appeal or the motion for a new trial, yet if its re-
citals show that both the motion and affidavit were timely
filed, and they are set out in the bill of exceptions, the ab-
stract, under Rule 32, is, in those respects, sufficient.

3. ———: **Motion for New Trial: Sufficient Assignment.** An as-
signment in the motion for a new trial in a law case, that "the
finding is against both the law and evidence and against the

law under the pleadings," warrants the appellate court in determining whether there is any law or evidence to sustain the judgment.

4. **SPECIAL TAX BILLS: Against Property Condemned for City Purposes: Liability of City.** By an ordinance approved January 24, 1901, the city authorized the construction of a district sewer, to be paid for by special tax bills issued against the property within the district, and the contract was entered into February 28, 1901. By ordinance approved October 3, 1889, the city authorized the condemnation of certain property within this subsequently-formed sewer district, for a parkway, and judgment in the condemnation proceeding was rendered September 14, 1901, and affirmed in the Supreme Court June 4, 1902, and thereafter the city paid for and took possession of the lots. While said condemnation was pending on appeal, the contractor completed the sewer, and the city issued him tax bills in payment for the work, March 15, 1902, among others, tax bills against lots which had been taken by the city for the parkway, and his contract provided that the ordinance "shall not render the city liable to pay for such work or any part thereof otherwise than by the issue of special tax bills" and the charter provided that "the city shall in no event nor in any manner whatever be liable for or on account of the work done in constructing" said sewer, but that it should be paid for in special tax bills, which should be a lien on the property described in them. The contractor assigned the bills to the plaintiff, who sues the city for the amount of them, as upon contract. *Held,* that the Constitution of Missouri (Sec. 48, art. 4) and the statute (Sec. 2778, R. S. 1909) absolutely forbid the use of municipal funds in payment of said tax bills, since they forbid the payment of an obligation arising out of a contract unless the same is within the scope of the city's powers, and the charter prohibited the making of a contract to expend city funds until an appropriation therefor was antecedently made; and as said suit is not founded on tort, that is, as for a conversion or destruction of property upon which the lien of the tax bills would ordinarily attach, no judgment for plaintiff can stand. [Distinguishing In re Paseo, 78 Mo. App. 578, and Ross v. Gates, 183 Mo. 338.]

5. ———: **Liens: Condemnation: Title Relating Back to Judgment.** The title of the city to lots taken by condemnation for a public highway relates back to the date of the judgment confirming the verdict of the jury, and if an appeal is taken from the judgment and that is affirmed, the title of the city still relates 'back to the date of the judgment; and special tax bills issued after that date against lands taken by the judgment for the city, do not constitute a prior lien, although issued while said appeal was pending in the appellate court.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn,* Judge.

REVERSED.

*John G. Park, A. F. Smith, Ingraham D. Hook, A. F. Evans* and *Jay M. Lee* for appellant.

(1) Kansas City is not liable. First. The charter of Kansas City provides: (a) No special tax bill shall be issued against city property, but a certificate shall be issued by the Board of Public Works. (b) A street, avenue or highway is exempt from assessments for sewer construction. Second. The ordinance for the construction of the District Sewer No. 146 and the contract with Walsh, plaintiff's assignor, so provides. Third. Walsh released Kansas City from all liability. (2) Plaintiff's remedy was mandamus. An examination of plaintiff's petition will disclose that it is virtually a suit upon special tax bills. There were introduced in evidence seventy-five tax bills identical with those issued against private property. The judgment is upon each one of the seventy-five counts in the plaintiff's petition, each of which is based upon a tax bill for the face of the tax bill and with interest thereon since the date of its issuance. In the contract with Walsh there was no provision for the payment by the city of any amount whatsoever, but the whole cost was to be paid for in special tax bills. Charter of 1898, secs. 10, 11 and 14, art. 9. Kansas City is entitled to the possession of land condemned for parks or boulevards when the compensation adjudged to be paid therefor is made or paid into court. Sec. 28, art. 10, charter 1898. The passing of the title to land condemned relates back to the date of the judgment of the confirmation of the verdict of the jury whenever the proceedings are finally affirmed and the awards paid. In re Paseo, 78 Mo. App. 521. The judgment of con-

firmation in the condemnation proceeding was rendered September 14, 1901; the tax bills for the sewer construction were not issued until March 15, 1902. It is apparent that the city owned the property in fee simple under the "Paseo Extension" condemnation at the time the tax bills were issued to Walsh. It is apparent, too, that the city is not liable on special tax bills issued against land which it owns in fee simple, but a certificate of indebtedness therefor must be issued by the Board of Public Works and the amount for which the certificate stands is appropriated for the holder thereof by ordinance of the Common Council. The provisions of the charter relative to taxation or liability for special assessments must be strictly followed and construed. Westport v. Mastin, 62 Mo. App. 654. (3) The charter furnishes a further and, if possible, more vital reason for non-liability of Kansas City in this case. Section 10, article 9, provides that the cost of the sewer shall be spread over the area of the sewer district "exclusive of streets, avenues, alleys and public highways." And section 14, article 9, provides that the certificate heretofore mentioned, which the Board of Public Works shall issue against property owned by Kansas City in fee simple for special improvements shall not apply to "any land . . . used as a street, avenue, alley or public highway." The property against which the seventy-five tax bills were issued was previously condemned by Kansas City for a public highway. The title to ordinance No. 13067 discloses its purpose to be: "An ordinance to open and establish a public parkway in the south park district in Kansas City, Missouri." A description of the property proposed to be taken therein discloses that it is a long ribbon-like piece amounting to a wide street or avenue. Kleopfert v. Minneapolis, 90 Minn. 158. Inasmuch as the city acquired the title to the land against which these tax bills were issued for a public parkway some time previous to the issuance of the tax bills and that

the lands were therefore not such that tax bills could be issued against them, this proceeding cannot be maintained.

*W. R. James* and *Scarritt, Scarritt & Jones* for respondent.

(1) The appellant's record is insufficient to confer jurisdiction on this court. (a) The record proper as there abstracted does not show the filing of a motion for new trial. This is fatal. Sheridan v. Post, 140 Mo. App. 96; Harding v. Bedoll, 202 Mo. 625; Alt v. Dines, 227 Mo. 418. (b) The record proper as there abstracted fails to set out any affidavit for appeal, or the substance of any such affidavit. This is fatal. Shemwell v. McKinney, 214 Mo. 692; Greenwood v. Parlin-Orendorff Co., 98 Mo. App. 407. (2) There is no merit upon the record in this court in any of the alleged errors of the trial court recited in defendant's motion for a new trial, because appellant's abstract of record does not purport to set out all of the evidence adduced at the trial, nor does it recite any exceptions to the testimony or rejection of evidence by the court, nor does it complain of the law as declared by the court at the request of the plaintiff. (3) There is no merit in the city's contention, advanced for the first time in this court, that the lots or tracts of land described in the tax bills were not chargeable for the cost of the sewer on the ground that they were not then (March 15, 1902) private property, but were a street. (a) No such issue is raised by the pleadings. The petition charges that at the time the sewer work was completed and tax bills issued the lots were owned by and in the possession of private individuals as owners; the answer expressly admits and states that the tax bills were issued against these lots, but that the certification spread upon the records of the Board of Public Works apportioning a certain charge against

each of these lots, followed by the delivery of special
tax bills, did not impose a liability upon the city as
the owner of the lots in question in fee simple absolute,
as contemplated by section 14, article 9, of the city
charter.   (b)   Under all the proofs construed in the
light of the express declarations of the Constitution
of the State contained in the Bill of Rights (Art. 2,
sec. 21), and the provisions of the city charter in
respect to issuance of tax bills to pay for sewer work
and the interpretation put upon those provisions by
the officers of the city at the time, there can be no
question that the officers of the city, whose duty it was
to issue special tax bills, could not have done otherwise
than issue the bills against these lots.   (4)   When the
tax bills were issued (March 15, 1902) the lands charged
were not a street, boulevard or parkway, but were lots
and tracts of land owned by and in the possession of
private individuals.   It is true that on that date a
condemnation proceeding was pending, but it is equally
true on the showing made in this record that the city
had the absolute right at that time and for months
thereafter to dismiss its proceeding, take nothing
thereby and be liable to no individual for what it had
already done.   If these lots were private property at
that time there can be no question but that the as-
sessing officers did their duty, and their full duty, in
levying the assessments and issuing the bills against
those lots; and in that view of the case it is absurd
to talk of mandamus as a remedy to make them do
something different.   There is no charter authority for
them to do now anything different from what they did
then.   If these lots at that time were public property
they were not a street, nor highway, because property
occupied by stores and residences is not a street or
highway; and therefore if they were then owned by
the city in fee simple absolute they would be charge-
able as city property with their *pro rata* share of the

cost of the work. (5) The amounts apportioned against the lands in question could not have been deducted from the condemnation award for these lands because the value of the lands in the condemnation proceeding was fixed at a trial had June 3, 1901, and the improvements for which the assessments were levied were not completed, nor were tax bills issued therefor, until March 15, 1902. In re Paseo, 78 Mo. App. 518. (6) The city, having confiscated the plaintiff's property in these tax bills by procuring a final judgment long after the tax bills were issued, by divesting the property owners of their title, possession and ownership of the lands charged, and vesting the same in the city for public use and refusing to pay the amount of these assessments, is clearly liable to the plaintiff under the State and Federal constitutions guaranteeing persons against the deprivation of their property without due process of law. (7) It is absurd to assert under this record that the contractor to whom the tax bills were issued by the city in good faith, and receipted therefor in good faith as full settlement of the contract price, is estopped by that receipt from maintaining this suit. Paving Co. v. Denver, 72 Fed. 336; Paving Co. v. Harrisburg, 64 Fed. 283; Electric Light & P. Co. v. Ft. Dodge, 115 Iowa, 568; Pipe & Tile Co. v. Callahan, 125 Iowa, 358; Oster v. City of Jefferson, 57 Mo. App. 485; Fisher v. St. Louis, 44 Mo. 482; Paving Co. v. Chicago, 139 Ill. App. 121.

FARIS, J.—This is an action at law in seventy-five counts for divers sums of money aggregating in all the amount of $3924.42. Plaintiff sues as the assignee of one Michael Walsh, who made a contract with defendant city to construct certain sewers therein.

All of the seventy-five counts in the amended petition were identical. This petition, in the view which we take of the case, is important, and in connection with the tax bills and the assignments thereof, is

decisive of the case.   In fairness, and for clearness's sake we set out below one of these counts in full, omitting merely formal parts, as follows:

"Now comes plaintiff and for cause of action against defendant alleges that plaintiff is a corporation duly organized and existing under the laws of the State of Missouri, and the defendant is a municipal corporation duly organized and existing under the Constitution and laws of the State of Missouri.

"That by an ordinance of Kansas City, No. 16219, entitled, 'An ordinance to establish and cause to be constructed a district sewer in Sewer District No. 146,' approved January 24, 1901, said defendant, Kansas City, provided that a district sewer should be constructed in Sewer District No. 146 in said Kansas City as designated by said ordinance.

"Plaintiff alleges that bids for doing the work provided for by said ordinance were duly advertised for by said Kansas City and a contract was duly entered into with Michael Walsh to construct the said sewer, he being the lowest and best bidder therefor.

"Plaintiff alleges that pursuant to said contract and ordinance said Michael Walsh constructed the sewer provided for by said ordinance and that by the terms of said contract and ordinance said sewer was to be paid for by special tax bills against the real estate within the said Sewer District 146, as provided by the charter of Kansas City.

"Plaintiff alleges that Lot 1, Block 1, C. H. Pratt's Vine Street Addition, is located within said Sewer District No. 146 and that at the time said work was done and tax bills therefor were issued, the owner of said property held the same subject to certain proceedings to condemn said lot for a public parkway in the South Park District in Kansas City, Missouri, known as the 'Paseo Extension,' under ordinance No. 13067, entitled, 'An ordinance to open and establish a public parkway in the South Park District in Kansas City, Missouri,'

approved October 3, 1899. That by said ordinance last mentioned it was ordained that said Lot 1, Block 1, and other property should be condemned for the purpose of a public parkway. That under said ordinance, proceedings were begun in the circuit court of Jackson county, Missouri, for the condemnation of land described in said ordinance as required by law. The owners of said lands at the date said condemnation ordinance was enacted were properly made parties to the proceedings and a hearing was had to determine the value of the property taken and a verdict in said case was rendered in the circuit court of Jackson county, on the 4th day of June, 1901.

"Plaintiff alleges that motions for a new trial were filed in said cause, which were duly overruled and said verdict was duly confirmed and judgment was rendered in said cause on the 14th day of September, 1901, by said circuit court.

"The plaintiff further alleges that said cause was appealed to the Supreme Court of the State of Missouri, October 4, 1901, and that upon said appeal said judgment of the circuit court was suspended until affirmed by the Supreme Court, and was so affirmed June 4, 1902; and that subsequently to that date said Kansas City paid for and took possession under said condemnation proceedings of Lot 1, Block 1, C. H. Pratt's Vine Street Addition, as a public park and now holds the same as such.

"Plaintiff alleges that while said condemnation case was pending upon appeal in the Supreme Court, said Michael Walsh completed the work under his contract for the construction of district sewers in Sewer District No. 146 under said Ordinance No. 16219; and that the Board of Public Works of said city thereupon ascertained the share of the cost of said work for which the said lot and the owner thereof and the said city were justly liable, and the said board certified the said amount both upon its records and by a certificate or

tax bill which it then issued to said Walsh on March 15, 1902, in payment of the proportionate share of the cost of the work of constructing said sewer chargeable to or on account of said lot as provided by law. That the said certificate or tax bill was No. 84, and was issued against Lot 1, Block 1, C. H. Pratt's Vine Street Addition, for the sum of $43.20, being the proportionate part of the cost of the said sewer required to be paid on account of said lot under the charter of Kansas City.

"Plaintiff alleges that for valuable consideration, said Michael Walsh heretofore sold and assigned said certificate or special tax bill to this plaintiff, who is now the owner and holder of the same, which is hereto attached, herewith filed and made a part of this petition.

"Plaintiff alleges that it is advised by counsel and believes, and therefore charges the fact to be, that by reason of the prior judicial determination of the value of said property and the judgment of condemnation thereon, in said condemnation proceedings, said tax bill never became a lien upon the value of said lot awarded to the owner thereof, in said condemnation proceedings, but that upon the final determination of said condemnation case, the defendant, Kansas City, became and is liable to pay said amount of the said certificate or tax bill with interest thereon, and that Kansas City cannot by an act of itself not consented to by the plaintiff, either by judicial proceedings in the nature of condemnation or otherwise, destroy the plaintiff's right to collect the cost of the said work according to its said contract, and in support of this claim the plaintiff invokes the Fourteenth Amendment to the Constitution of the United States guaranteeing the protection of its property by due process of law and as against the acts of states.

"Plaintiff alleges that prior to the commencement of this action it offered to surrender to the Board of Public Works and to Kansas City said certificate or

tax bill issued as aforesaid if the said city or said board should believe and hold that the said certificate or tax bill was not a certificate of said Board of Public Works conformable to the provision of section 14, article 9, of the charter of Kansas City, and to accept in lieu thereof such a certificate as is provided for by said section 14, but said city and said board refused to accept the same or issue a new certificate in lieu thereof and denied all liability for the said charge.

"Plaintiff states that defendant has failed to pay the amount of said certificate or tax bill, although payment thereof was demanded March 15, 1902.

"Plaintiff alleges that by reason of failure to pay said certificate or bill, or any part thereof, and by reason of its action in the premises, plaintiff is entitled to recover of defendant the amount so certified by said board as lawfully chargeable against said lot, with interest as therein provided at the rate of ten per cent per annum.

"Wherefore, plaintiff asks judgment against defendant for the sum of $43.20 with interest from March 15, 1902, at the rate of ten per cent per annum and for costs of this action."

The tax bill referred to and made a part of the foregoing petition seems to have been the usual and ordinary special tax bill issued in payment for improvements, the costs of which are apportioned against the adjacent or abutting private real property. Said tax bill was payable in four annual instalments (including the first or initial cash payment), and as to the attachment and nature of the lien created thereby, a pertinent part of the said tax bill thus provided:

### KANSAS CITY SPECIAL TAX-BILL.
#### ISSUED ON THE INSTALMENT PLAN.

This certifies that the following described real estate in the corporate limits of Kansas City, county of Jackson, Missouri, as follows, to-wit: Lot 1, Block 1, C. H. Pratt's Vine Street Addition, has been charged with the sum of forty-three

dollars and twenty cents, as a special tax for constructing a sewer in Sewer District No.146, as provided by Ordinance No. 16219, of Kansas City, Missouri, entitled, "An Ordinance to establish and cause to be constructed a district sewer in Sewer District No. 146," approved January 24, 1901. Said work has been completed according to contract by Michael Walsh, contractor, to whom this special tax bill is issued in part payment therefor, and the sum mentioned has been duly assessed and apportioned against the aforesaid land, being the exact amount chargeable against said land, as provided by law for its proportion of the cost of such work as a lien against said land for a period of one year after the last installment specified herein shall have become due and payable, and no longer, unless within such year suit shall have been instituted to collect this tax bill, and notice of the bringing of such suit shall have been filed with the city treasurer, in which case the lien of this tax bill shall continue until the termination of such suit, and until the sale of the property under execution on the judgment establishing the same, and no default in the payment of any previous instalment hereinafter mentioned shall operate to diminish the period during which such lien shall continue.

Upon the trial below judgment was rendered for plaintiff upon each of the said seventy-five counts, aggregating the sum mentioned, and defendant, according to the usual procedure, has appealed.

Other details necessary to an understanding of the case will be found set out in the opinion, where additional facts are stated in connection with the points discussed.

## OPINION.

I.  We get jurisdiction because the Fourteenth Amendment to the Federal Constitution is pleaded and invoked and said to be involved.

At the outset two contentions of respondent meet us: (a) that the record proper shows neither an affidavit for appeal nor the filing of a motion for a new trial, and (b) that no legally tangible matter is presented for our review by the motion for a new trial.

Abstract:
Affidavit and
Motion for
New Trial.

Counsel for respondent have evidently not read the appellant's abstract with care, and also they have overlooked the provisions of Rule 32 of this court adopted December 10, 1912. The record entries showing the filing of, and the orders of court touching the motion for a new trial, and the affidavit for appeal, as the abstract sets them out, are as follows:

"Thereafter on January 25, 1910, during the said January term, 1910, of said court and within four days after said finding and judgment, defendant filed its motion for a new trial. Said motion is hereinafter set out in the bill of exceptions and is hereby adopted and made a part of this abstract of the record as though printed in full at this place.

"January 29, 1910, during said January term, 1910, of said court, said motion for a new trial was submitted to the court and upon due consideration, by an order duly entered and made of record, was, upon January 29, 1910, during said January term, 1910, of said court, by the court overruled; to which action of the court in overruling defendant's said motion for new trial the defendant at the time excepted and still excepts.

"March 22, 1910, and during the said January term, 1910, of said court, defendant filed its application and affidavit for an appeal to the Kansas City Court of Appeals, which appeal was upon March 22, 1910, by an order duly entered and made of record, allowed as prayed to the Kansas City Court of Appeals."

The bill of exceptions, as the record shows it, contains the motion for a new trial in full, as also exceptions to the action of the trial court in overruling it. The affidavit for appeal is copied in full in the bill of exceptions and the contents of such affidavit fully comply with the law. This contention is therefore disallowed.

II. Upon the point (b) made by respondent that the motion for a new trial presents no matter for our

Motion for
New Trial:
Sufficient
Assignment.

review when viewed in the light of the record, we note that complaint is made of error in refusing declarations of law, when none was asked; of the refusal to admit evidence of defendant, when none was refused, and of the admission of incompetent evidence for plaintiff when no such objection is kept alive here in the briefs for our examination. But defendant has in five separate assignments of error rung the changes upon the complaint, *in haec verba, "that the finding is against both the law and evidence and against the law under the pleadings;"* and while this is a jury-waived law case, we think we are warranted in looking to see whether there is any law or evidence which can sustain this judgment. We may not weigh the evidence; for the trial judge alone had that privilege and duty. We may only look and see if there be any substantial evidence whatever in the case, which, when applied to the case made by the pleadings will, as a matter of law, permit this judgment to stand. We disallow this point to respondent, conceding, however, that it is well taken as to all but the point last above noted.

III. Coming now to the contentions of appellant (whom for clarity we shall call defendant), we note

Special Taxbill:
Charge Against
City Property in
Sewer District.

that the only point made and saved properly for review is that we mention above, which we repeat, is saved, or so sought to be, by five separate assignments in defendant's motion for a new trial. It would be doleful satire, indeed, if no point could be said to be preserved after so great labor and effort to save it.

The facts are neither contradicted nor disputed. The dispute is alone upon the legal effect of the facts. The defendant offered no evidence whatever, except a receipt to the defendant city, given on March 15, 1902, by the contractor Walsh, when the tax bills here sued

on were issued to him. This receipt, omitting formal parts, sewer number and signature, is as follows:

"Received this day the above mentioned special tax bills, amounting to the sum of $71,521.32, in full for work done on sewer constructed in above named district, and of all claims against Kansas City on account of above mentioned work."

The contract made by said Walsh with defendant, among other provisions, contained the following:

"Section 12. *General Stipulations.* It is further agreed that the passage of the ordinance hereinabove referred to and the doing of the work embraced in this contract without any proper petition of the Common Council from the real estate owners to have said work done, shall not render the city liable to pay directly or indirectly, for such work or any part thereof otherwise than by the issue of special tax bills, and the said first party shall assume all risks as to the validity of such special tax bills and take the same without recourse against Kansas City in any event.

"Sec. 15. And the said party of the first part further agrees that he will not be entitled to payment for any portion of the aforesaid work or materials, until the same shall have been fully completed in the manner set forth in this agreement to the satisfaction of the city engineer, and that he will then receive pay according to the above schedule of prices in certified bills of assessments of special taxes against and upon the lands in said sewer district, as provided by law, and that his receipt therefor shall be in full of all claims against the city on account of said work.

"Sec. 16. . . . That special tax bills be issued for the work of improvements herein provided for and shall be made payable in four equal installments payable and collectible and in all respects in compliance with the provisions of section 23, article 9 of the charter of Kansas City."

The provisions of the charter of Kansas City in effect when the contract was made with Walsh and likewise when the tax bills were issued to him, provided, relevant to the questions here troubling us, thus:

"As soon as the work of constructing, changing, diminishing, enlarging or extending any district sewer shall have been completed under a contract let for the purpose, the board of public works shall compute the whole cost thereof, and apportion and charge the same as a special tax against the lots of land in the district, exclusive of the improvements, and in the proportion that their respective areas bear to the area of the whole district, exclusive of the streets, avenues, alleys and public highways, and shall, except as hereinafter provided, make out and certify in favor of the contractor or contractors to be paid, a special tax bill for the amount of the special tax against each lot in the district. The city shall in no event nor in any manner whatever be liable for or on account of the cost of work done in constructing, changing, diminishing, enlarging or extending any district sewer, except as hereinafter provided." [Sec. 10, art. 9, p. 147, Charter of Kansas City 1898.]

The exceptions creating liability against the city, noted in the last four words of the concluding clause of the above excerpt, are to be found in sections 11 and 14 of article 9, pp. 148 and 150, charter of Kansas City of 1898. The said exception in the section first above, in substance provides that in cases of the construction of joint district sewers the city may, *if it be so provided both in the ordinance and in the contract,* pay a specific part of the cost of such sewers. Neither the ordinance nor the contract so provided in this case. The other exception may be best shown by setting out, as we do below, the whole of said section 14, in which said exception occurs, thus:

"When the city shall own in fee simple absolute any lot or parcel of land, or hold any land not used

as a street, avenue, alley or public highway, it shall out of the general fund pay its proper share of the cost of any such work to be paid for in special tax bills as though a private owner of such land, but there shall be no tax bill against any land so owned or held by the city. The board of public works shall ascertain the share for which the city shall be justly liable, and the amount so ascertained shall be certified to by the board of public works.''

The Constitution of Missouri forbids the use of municipal funds in payment of any obligation arising contractually under circumstances such as are before us. [Sec. 48, Art. 4, Constitution 1875; State ex rel. v. Dierkes, 214 Mo. 578.] The statute of the State likewise forbids the expenditure of such funds upon obligations arising from contract, as will be seen by an examination of section 2778, Revised Statutes 1909, which reads thus:

''No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing.''

The charter of Kansas City had in it at all the times within the period of the record herein, another provision which is pertinent and which prohibits the making of a contract to expend city funds till an appropriation therefor has been antecedently made and making void *ab initio* any contract made in contravention thereof. [Sec. 30, Art. 4, Charter Kansas City 1898.]

It follows from a consideration of all of the above prohibitions that no liability for the tax bills, or for the payment of the money therein mentioned and which is based in anywise upon contract, could possibly arise against the defendant upon any view. The suit here is upon a tax bill in some aspects and upon a tort as for conversion in others. The petition is *sui generis,* being possibly what is meant by learned counsel for plaintiff when they say of it in their brief that it is "typical in form."

We need not consider whether a recovery could have been had upon tort, as for the alleged conversion, or destruction, of the property upon which ordinarily the lien of the tax bills would have been fixed. *The assignment is not of the tort, nor of the contract, nor of the right to recover upon a quantum meruit, but of the tax bill pure and simple,* for it says: "For value received —— assign this special tax bill and the lien thereof to Municipal Securities Corporation," etc. The lien assigned was upon the lots and not against defendant; but the law is fairly well settled that the title of the city to these lots for use as a street attached by relation back under the facts here to the date of the judgment confirming the verdict of the jury, to-wit, September 14, 1901, a date long prior to the issuing of the tax bills, which were issued March 15, 1902. [In re Paseo, 78 Mo. App. 518.] The best that can be said for plaintiff's insistence touching this lien is that the lien of the tax bills attached conditionally to these lots; the condition of attachment being that the defendant would dismiss its condemnation case short of final judgment and payment of the money into court, as under the general law, absent a charter provision forbidding, it had the right to do. [State ex rel. v. Fort, 180 Mo. 97; Railroad v. Second Street Imp. Co., 256 Mo. l. c. 407.] The city did not so dismiss the proceeding and the right of the city, temporarily suspended, as we may express it, by the appeal, attached

upon the affirmance here of the judgment of condemnation as of the date of such judgment (In re Paseo, supra), and had the effect to convert these lots of private persons into integral parts of the highway, or street system of Kansas City, and to take them out of the category of property of private person upon which liens of tax bills would attach; but since these lots became parts of public highways the judgment condemning them did not have the effect of converting them into that class of city property, the sewering of which created a liability against the city for which certificates evidencing such liability against the city were issuable by charter. [Sec. 14, art. 9, Charter of Kansas City 1898.]

If Walsh himself had sued for the tort of conversion alleged in effect by the briefs and contentions of counsel for plaintiff, a different and much more serious question would confront us; but it seems idle to insist that upon the petition here and upon the assignment above quoted, that plaintiff may recover upon the theory of tort. We have seen already how futile and idle is the view that plaintiff may recover upon contract. Moreover, no such tort is assigned. Nothing is assigned but the tax bill and the lien thereof. The logic of the situation manifestly suggests the rule that all of the taxpayers of a city ought not to be taxed for the default of the city to properly levy a special improvement tax against the property of an infinitesimal part (e. g. a sewer district) of such city. [1 Dillon, Munic. Corp. sec. 482; 1 Elliott, Roads and Streets, sec. 657.] There are on this point, however, a respectable number of authorities which adhere to the contrary view. [Fort Dodge Electric L. & P. Co. v. Fort Dodge, 115 Iowa, 568; Iowa Pipe & Tile Co. v. Callanan, 125 Iowa, 358; Barber A. P. Co. v. Chicago, 139 Ill. App. 121; Barber A. P. Co. v. Denver, 72 Fed. 336; City of Pontiac v. Talbot Paving Co., 94 Fed. 65; Donnelly v. Brooklyn, 121 N. Y. 9; Galveston v. Heard,

54 Tex. 420.] Cases from other jurisdictions which are not affected or hedged about by so many and such stringent, forbidding constitutional provisions, statutes and charter limitations, are of small, if any value in determining the question vexing us here. But be this as may be, the point of peculiarity in the instant case that plaintiff cannot in any event recover upon any theory of contract, but that it must recover, if at all, upon the theory of liquidated compensation for a tort, which tort was not assigned to it and on which it does not sue, destroys in our view any helpful analogy between the above cases from other jurisdictions and this one at bar.

Neither are we impressed with the view that since it was under certain circumstances (which, however, do not exist in the instant case) the duty of the defendant's Board of Public Works to issue certificates showing the liability of the city, the plaintiff, as the assignee of the contractor, in the absence of the performance of said Board of Public Works of the alleged duty to issue such certificates, may sue the city upon a bare tax bill issued against the property of private citizens. If the lots upon which the liens are averred to exist had been purchased or taken and condemned by the city for a park or for a city hall, or for some such use as produced in the city a title in fee, then it would have been the duty of the Board of Public Works to issue certificates for the city's proportionate part of the cost of the improvements. [Sec. 14, Art. 9, Charter of Kansas City 1898.] But as a parkway is a street, or highway, of a certain kind and not a park within the purview of the above section of the charter (Kleopfert v. City of Minneapolis, 90 Minn. 158; Century Dictionary), the said Board of Public Works neither issued, nor had authority to issue, any certificate on behalf of the city thereon. It is clear, therefore, that no liability can arise upon a tax bill, regarded as merely standing in the place of such a certificate,

when the issuance of such certificate itself would have been unwarranted.

The Missouri cases cited are not in point. The case of Oster v. City of Jefferson, 57 Mo. App. 485, was a suit upon contract and for the contract price of doing certain macadamizing, curbing and guttering, and not upon an assigned tax bill; besides this, the case rode off upon the peculiar terms of the statute (now changed by amendment) under which the work was done.

The case of Fisher v. City of St. Louis, 44 Mo. 482, was a suit upon contract, and not an action either upon a tax bill or by the assignee of a tax bill. Besides, the cause of action accrued and the action was brought prior to the adoption of our present Constitution.

Neither the case of In re Paseo, 78 Mo. App. 518, cited and strongly relied on by plaintiff, nor that of Ross v. Gates, 183 Mo. 338, cited and largely relied on by defendant, is in our view decisive of the questions in this case. In fact in the Ross-Gates case it is affirmatively found by this court that the jury which sat in the condemnation suit took into account and added to their award, the increase in value of the condemned property by reason of the identical improvement represented by the tax bills there sued on. Manifestly then no two views could exist as to the right of the holder of the tax bill to recover such excess sum so held out of the award by the city. A further comparison of the chronology of the happenings in the case at bar with those in the two cases supra, so strongly relied on, respectively, by counsel on opposing sides here, discloses such a difference as to make them of little value, unless it be upon the point whether plaintiff was entitled to a lien upon the jury awards to pay his tax bills. If we were to follow the case of In re Paseo, supra, we must needs hold that no lien attached in favor of Walsh or his assignee upon the award made

upon condemnation of the several lots against which the tax bills were issued. But the latter point is not in the instant case; besides, the differences in the nature of the action at bar and that in the said case of In re Paseo, would make it wholly unnecessary for us to pass, and we do not pass, upon the latter question. But let us look to these several facts: In the instant case the ordinance of condemnation was passed October 3, 1899; the contract for the construction of the sewer was made with Walsh on February 28, 1901. The jury in the condemnation suit rendered its verdict June 8, 1901; judgment was entered thereon September 14, 1901; two persons—Mastin and another, charged with a part of the betterment expenses, but whose property was not condemned—appealed; the tax bills were issued to Walsh March 15, 1902, and this court affirmed the condemnation suit on Mastin's appeal on June 4, 1902. [Kansas City v. Mastin, 169 Mo. 80.]

In the Paseo case the ordinance condemning the Scarritt land and other lands was passed on November 15, 1895; the paving and curbing ordinances were passed October 16, 1895, and November 23, 1895, respectively (the date of the contract for the improvements does not appear); the verdict of the jury of condemnation was rendered September 26, 1896, and judgment was entered thereon on November 14, 1896, and subsequently, on to-wit, December 16, 1896, and April 1, 1897, respectively, the tax bills were issued to the contractor.

In the case of Ross v. Gates, supra, the condemnation ordinance passed November 13, 1895; the contract for the paving was made December 24, 1895; the tax bills were issued December 15, 1896; the verdict of the jury condemning the land was rendered January 23, 1899, and judgment followed January 13, 1900, and the jury took into consideration the amount of the several tax bills, and added the same to their award.

265Mo.18

We feel no manner of doubt that defendant may not be held under the law in this sort of action for this sort of claim. [Cotter v. Kansas City, 251 Mo. 224; Likes v. Rolla, 184 Mo. App. 296; Thornton v. Clinton, 148 Mo. 648.]

Pertinent to the inherent, or at least apparent, unfairness and hardship of the uniform enforcement of these hard-and-fast rules, the learned Springfield Court of Appeals, in the case of Likes v. Rolla, supra, at page 307, in a well-considered opinion by STURGIS, J., said:

"The apparent hardship and injustice resulting to one who has acted in good faith arising from enforcing the strict rules laid down by our statutes in making contracts with public corporations has often been weighed against the abuse and squandering of public money growing out of a disregard of such restrictions. We refer any interested reader to Crutchfield v. Warrensburg, 30 Mo. App. 456, and Cotter v. Kansas City, 251 Mo. 224. It is sufficient to say that this State has tried both systems, and until the Legislature sees fit to adopt a less strict rule, or permits the courts to do so, we must enforce the law as we find it."

In the case of Cotter v. Kansas City, supra, at page 230, our learned Commissioner Roy said:

"We appreciate the hardships of this case. At the same time we call attention to the fact that both parties to the contract acted in apparent good faith. Both contemplated the possibility that the special tax bills might be invalid; and it was mutually agreed that the city should in no event be liable."

It follows from what is said that this case must be reversed, which is accordingly ordered.

PER CURIAM.—The foregoing opinion of FARIS, P. J., written in Division Two, is concurred in and adopted as the opinion of Court in Banc. *Brown, Bond, Walker* and *Blair, JJ.,* concur; *Woodson, C. J.,* dissents; *Graves, J., dubitante.*