KINGMAN PLOW COMPANY, Appellant, v. JAMES R. JOYCE et al., Trustees, Respondents.

St. Louis Court of Appeals, March 7, 1916.

1. SALES: "Conditional Sales:" Definition.  The term "conditional sale" is commonly applied to a class of transactions where, by the the term of the contract, the possession of the goods is delivered to the buyer but the property in them is to remain in the seller until the payment of the price.  The term is inaccurate and tends to confusion, since the transaction is not in reality a sale, but an agreement to sell.

2. ———: Bailments: Differentiation.  An agreed price, a vendor, a vendee, an agreement of the former to sell for the agreed price, and an agreement of the latter to buy for and to pay the agreed price, are essential elements of a contract of sale.  The power to require the restoration of the subject of the agreement is an indelible incident of a contract of bailment.

3. ————: Conditional Sales: Bailments: Contract Construed. An order on a printed form furnished by the addressee directed the latter to ship certain goods to the signer, which the signer agreed to "receive and settle for" upon the terms and conditions specified. Prices were designated, but no words were employed constituting an agreement, on the one hand to sell, and on the the other to buy. It provided that title to and ownership of all goods shipped should remain vested in the addressee; that the goods shipped should be held at all times subject to the latter's order; that the latter might draw on such goods to fill orders in the vicinity; that the goods were "to be paid for as sold;" and that "if sales were made before payment," the proceeds thereof were to be held in trust for the addressee until all obligations of the other party arising under the contract were fulfilled. *Held*, that, since the order did not contain an agreement on the part of the addressee to sell the goods nor an agreement on the part of the signer to buy and pay an agreed price therefor, it did not constitute a contract of sale, but it effectuated a bailment of the goods for the purpose of enabling the signer to sell them for the addressee.

4. ————: ————: ————: ————. The fact that the order employed the word "purchaser" in places, in describing the bailee, and that it provided that all goods were sold subject only to a certain warranty, are of no significance in determining the nature of the contract, since the order was prepared on a printed form designed for miscellaneous use by the bailor and these provisions contained in it might well be applicable regardless of the precise nature of the contract under consideration.

5. ————: ————: ————: ————. The fact that the order gave the bailee the right to acquire title to the goods by paying the designated price did not change the contract of bailment into one of conditional sale, since the bailee was thereby merely given an option to purchase, and a bailment with an option on the part of the bailee to buy is merely a bailment.

6. ————: ————: ————: ————. The fact that the bailee paid vided that if the signer should become insolvent, make an assignment, sustain loss by fire or other casualty, transfer property or close out business, all obligations provided for in the contract or arising therefrom should become due and payable at once or at any time thereafter, at the addressee's option, did not change the contract of bailment into one of conditional sale, since this clause does not attempt to create any obligation, but merely matures any obligation that might exist under the contract, when the stipulated conditions obtain.

7. ————: ————: ————: ————. The fact that the bailee paid the freight on the goods and was authorized to fix the selling prices thereof, retaining the difference between the agreed prices

for which it was to account to the bailor and its own selling prices, as compensation and to cover expense, did not make the contract one of sale.

Appeal from Scott Circuit Court.—*Hon. James A. Finch,* Judge.

AFFIRMED.

*Sturdevant & Sturdevant* and *Chas. A. Powers* for appellant.

(1) The transaction between plaintiff and defendant constituted a sale by plaintiff to the defendant of sixteen wagons at the price of $55 each and five wagon boxes at the price of $12 each, and none of the conditions expressed upon said contract in any manner or degree deprived the transaction of any of the attributes of a sale of personal property, binding upon both of the parties thereto. Tufts v. Wynne, 45 Mo. App. 42; Snyder, Exec. v. Murdock, 51 Mo. 175; Walker v. Owen, 79 Mo. 563, 569; Lavalley v. Ravenna, 2 L. R. A. (N. S.), 98; Peters et al. v. Featherstum, 61 Mo. App. 466. (2) Neither the reservation in said contract, of the title in plaintiff until the goods were paid for nor the provision that they should be paid for as sold, affected the transaction as a sale of personal property. Conditions like these are typical of a usual course of business in transactions of this character and under the well settled authorities in Missouri and elsewhere are entirely consistent with the right of a purchaser to retain the title of the goods sold and the corresponding right of the seller to enforce payment therefor. Blow, Adm. v. Spear et al., 43 Mo. 496; McArthur v. Wilder, 3 Barb. 66; Bicking v. Stevens, 69 Mo. App. 168; Newmark on Sales, sec. 23; 21 Amer. & Eng. Ency. of Law, p. 520; McArthur v. Wilder. 3 Barb. 66, 175; Granite Roofing Co. v. Casler, 82 Mich. 466; Tufts v. Wynne, 45 Mo. App. 42; Snyder v. Murdock, 51 Mo. 175; Lavalley v. Ravenna, 2 L. R. A. (N. S.) 98; Manning v. Ins. Co., 123 Mo. App. 456. (3) The provision in said contract that the indebtedness should

- become due and payable on the condition, among others, that the purchaser should sustain loss by fire, matured the indebtedness sued on, on the 8th day of June, 1911, the day upon which, according to the testimony, defendants' business was destroyed by fire; and it was further subject to become mature under the contract upon the insolvency of the purchaser, or its going out of business, both of which events also occurred. (4) The stipulation in said contract that the plaintiff should have the right to draw from said wagons to fill orders taken in Southeast Missouri is likewise consistent with a sale of the property, that provision being merely a privilege granted to the plaintiff by the purchaser, presumably upon consideration satisfactory to both parties.

*R. L. Ward* for respondents.

ALLEN, J.—This is an action to recover the sum of $610, the alleged purchase price of certain personalty delivered by plaintiff to the Farmers' Mercantile Company. Plaintiff corporation conducts a wholesale business, and in 1910 the Farmers' Mercantile Company, a corporation (hereinafter referred to as the "Mercantile Company"), was engaged in conducting a retail store at Vanduser, Scott county, Missouri. Under a written order executed by the Mercantile Company on September 3, 1910, plaintiff shipped to it fifteen wagons and five "Clinton boxes." It appears that three of the wagons were afterwards returned to plaintiff, and that two were sold by the Mercantile Company and payment made to plaintiff therefor. In June, 1911, the store buildings of the Mercantile Company were destroyed by fire, whereby the ten wagons remaining in that company's possession, and the five boxes, were totally destroyed. Thereafter the defendants were appointed trustees of the Mercantile Company in a proceeding for the dissolution of that corporation, and plaintiff instituted this action against them as such trustees.

At the close of plaintiff's case the court gave a peremptory instruction offered by defendant, in the nature of a demurrer to the evidence. Plaintiff thereupon took

a nonsuit, and, upon the court's refusal to set the nonsuit aside, appealed.

The written order of September 3, 1910, signed by the Mercantile Company, is, for the most part, a printed form furnished by plaintiff. It is addressed to plaintiff, and proceeds as follows:

"Please ship the goods hereafter specified on or about 19 or as soon thereafter as possible, via —————— from —————— to Farmers' Mercantile Company . . . the freight charges to be paid by the undersigned unless otherwise agreed and stipulated herein in writing, and the undersigned agrees to receive and settle for same upon these and other terms and conditions printed on back hereof, which are hereby agreed to as being our contract."

| "No. | Description. | Price Each. |
|---|---|---|
| 16 | Clinton Wagons Complete with spring seats but no brakes .............. | 55.00 |
| 5 | 26" Clinton Boxes ............... | 12.—" |

Upon the face of the order the following provisions were written, viz:

"Payable. These wagons are to be paid for as sold."

"Kingman Plow Co. reserves the right to draw on these wagons to fill orders taken in South East Mo."

The printed matter on the back of the order, referred to in the latter, contains certain provisions not applicable to this transaction, having to do with plow-shares, shovels, etc. And certain other provisions are here wholly irrelevant. So much thereof as could possibly have any bearing upon the case before us, is as follows:

"If requested, notes with highest legal rate of interest per annum from maturity, unless otherwise specified (including exchange and collection charges), will be given to you [plaintiff] on receipt of invoice and bill of lading in settlement of same, it being expressly understood that title to the goods shall not pass until said notes are paid in money.

•   •   •   •   •   •   •   •   •   •   •   •   •   •

"The undersigned purchaser agrees to look to transportation companies for all losses or damages to goods in transit when receipted for in good order. . .

"If the undersigned purchaser countermands this order, or any part thereof, or causes shipment to be held beyond present season, the undersigned purchaser agrees . . . to pay fifteen per cent of the net amount of the goods herein ordered to you as agreed and liquidated damages.

"It is distinctly understood that all goods are sold subject to the following warranty and no other, viz: that they are well made of good material, are durable if used with proper care and will do the work for which they are intended. . . .

"Should the undersigned become insolvent, make an assignment, remove to another place, execute a chattel mortgage, sustain loss by fire or other casualty, transfer property or close out business, or in case of death of any member of the firm or failure to carry out the conditions of this contract or if bankruptcy or attachment or other legal proceedings be begun against purchaser, all obligations provided for in this contract or arising therefrom, shall become due and payable at once, or at any time thereafter, at your option.

.     .     .     .     .     .     .     .     .     .

"It is expressly agreed that the title to and ownership of all goods shipped under this contract shall remain vested in you, unless at your option it shall be expressly waived in writing and the goods are to be held at all times subject to your order until paid for, if sales are made before payment, they shall be made only in the regular course of business and the proceeds of all such sales, whether cash, book accounts or notes, are to be held as your property in trust, until all obligations provided for in this contract or arising therefrom are fully paid in money or until full payment is made at the net prices herein specified but nothing in this clause shall release the undersigned purchaser from making payments as above stipulated. It is further agreed that notes taken by you are not accepted as payment or a novation of waiver of this contract; and shall not be

construed as a waiver of your right to have the same recorded, or right to take possession of said goods on demand, but that the same shall be binding as between parties, their successors and assigns.''

The rights of the parties depend upon the construction to be placed upon this instrument when taken as a whole. Plaintiff's action proceeds upon the theory that the contract thus entered into was one of sale, though the title to the goods was reserved by the seller until they were paid for; that the transaction was a ''conditional sale;'' and that where goods are thus sold and delivered, the seller retaining the title as security for the payment of the purchase price, they are at the buyer's risk, and he is liable for the purchase price though they are destroyed by fire or other casualty while in his possession.

The term ''conditional sale,'' is commonly applied to ''a class of transactions whereby the terms of the contract the possession of the goods is delivered to the buyer, but the property in them is to remain in the seller until the payment of the price;'' though as pointed out by the writers generally, the term is inaccurate and tends to confusion, since the transaction is not in reality a sale but an agreement to sell. [See 35 Cyc. 651, 652.]

''It is the distinguishing feature of the so-called conditional sale that the title to or property in the goods remains in the seller until payment of the price; but the buyer is entitled to the possession and use of the goods until default in payment. The security retained by the seller is not a lien, but a reservation of title and the right to pursue the property in specie.'' [25 Cyc. 652, 653.]

Learned counsel for plaintiff (appellant here) contend that the transaction here involved is a conditional sale, within the aforesaid meaning of that term; and proceeding upon this hypothesis cite a number of authorities in support of the further contention that in a case of such character the seller may recover the agreed purchase price, though the goods, in the buyer's possession, may have been in the meantime destroyed without his fault.

In Tufts v. Wynne et al., 45 Mo. App. 42, cited by appellant, the suit was upon promissory notes given by the defendants in part payment of the purchase price of a soda fountain purchased from plaintiff. The contract of sale provided that the title was not to pass until the entire purchase price was paid. Defendants "took the apparatus into their possession and used it in all respects as their own;" and while thus in their possession it was destroyed by fire. It was held that the destruction of the property did not relieve defendants from their obligation to pay the balance of the purchase price evidenced by the notes sued upon. In this connection see: Snyder v. Murdock, 51 Mo. 175, and Walker v. Owen, 79 Mo. 569, referred to in Tufts v. Wynne, supra, each of which involved a contract for the sale of realty.

In Farmer v. Moore, 73 Mo. App. 527, the contract under scrutiny was held by this court to be one of sale, "with the right reserved in the vendors to retake the property if not paid for in one year, and to collect the value of the use of the property for the time it should remain in the possession of the defendants, or to collect the selling price with eight per cent interest."

It would serve no useful purpose to refer to the many other authorities cited and relied upon by appellant in this connection. For the purposes of this suit it may be conceded, without deciding, that where the contract is one of sale, upon credit, and thereunder the goods are delivered to the buyer, the seller reserving in himself the title until the purchase price is paid, the destruction of the goods in the buyer's possession by fire or like casualty will not relieve him from his obligation to pay the purchase price. As to this it is said in 35 Cyc. at pages 670, 671:

"In some jurisdictions the rule prevails that on a conditional sale, since the title remains in the seller, the goods are at his risk, and in the event of their destruction or injury without the buyer's fault, the seller must bear the loss, following in this regard the rule that prevails as to sales generally. It is to be noted, however, that under a conditional sale the buyer is ordinarily vested with all the incidents of ownership except the title,

and by the weight of authority the risk of loss is therefore to be borne by the buyer, and he is liable for the price notwithstanding injury to or destruction of the goods.'' [Citing an array of authorities, among them Tufts v. Wynne, supra.]

But an examination of the written instrument upon which plaintiff here relies has convinced us that the contract here involved is not one of sale; that there was no sale of the property here in question, conditional or otherwise.

''An agreed price, a vendor, a vendee, an agreement of the former to sell for the agreed price and an agreement of the latter to buy for and to pay the agreed price are essential elements of a contract of sale. . . . The power to require the restoration of the subject of the agreement is an indelible incident of a contract of bailment.'' [SANBORN, C. J., in In re Columbus Buggy Co., 143 Fed. 859.]

The contract before us contains no words constituting, or purporting to constitute, an agreement on plaintiff's part to sell these goods; and none binding, or purporting to bind, the Mercantile Company to buy them and pay an agreed price therefor. Upon its face the instrument is an order, directed to plaintiff, to ship certain goods, which the Mercantile Company agrees to ''receive and settle for,'' upon the terms and conditions specified. Prices are designated, but no words are employed constituting an agreement on the one hand to sell and on the other to buy. The terms and conditions specified on the face of the order are that the wagons are ''to be paid for as sold,'' and that plaintiff reserved the right to ''draw on'' them to fill orders in Southeast Missouri.

Turning to the printed matter on the back of the instrument, we find nothing to make the contract appear to be one of sale. The incidental employment of the word ''purchaser'' is, in itself, of little, if any, significance. And the general provision found in this printed ''form'' (evidently one designed for miscellaneous use by plaintiff) to the effect that all goods are sold subject only to a certain warranty, might well be applicable re-

gardless of the precise nature of contract under consideration, and is not here a matter of consequence.

This printed matter contains a provision for notes to be given on request, but none were here requested or given, and there is nothing to indicate that this clause was intended to apply to this transaction.

It is expressly provided that the title to and ownership of all goods shipped under the contract shall remain vested in the plaintiff; that the goods are to be held at all times subject to plaintiff's order, until paid for; and that if sales are made before payment, the proceeds thereof are to be held in trust for plaintiff until all obligations of the other party, arising under the contract, are fulfilled.

It appears that no obligation was placed upon the Mercantile Company to pay anything unless and until the goods were sold. Upon a sale or sales being made, that company was required to hold in trust the proceeds and "settle" with plaintiff. In the meantime the goods were held subject to plaintiff's order, unless the Mercantile Company should elect to pay for them before making sale thereof; and plaintiff could fill its orders from them, or require that any part or all thereof be restored to it. And it appears that plaintiff did in fact cause three of the wagons to be returned to it or delivered elsewhere upon its order. The Mercantile Company had, by virtue of the contract, no power to deal generally with the property as its own; and the only distinct obligation, as to payment, placed upon it, was to faithfully account to plaintiff, at designated prices, out of the proceeds of sales made in the course of its business.

The contract is therefore lacking in the essential elements of an agreement of sale, and its provisions indicate clearly that the true intent and purpose thereof was to effectuate a bailment of the goods to the Mercantile Company for the purpose of enabling it to sell them in the course of its retail business.

From the language employed it may be inferred that the Mercantile Company had the right, at its option, to pay for the property and become vested with the title thereto, prior to sale thereof by it; though it was evi-

dently contemplated that such right was one not likely to be exercised. It is clear that no obligation was imposed upon the Mercantile Company to thus pay for the goods. It did not agree to pay a purchase price, but did agree to account to plaintiff out of the proceeds of any sale or sales. If it had the right to acquire title at any time by paying the designated price of all or any portion of the goods, this right was nothing more than an option to purchase plaintiff's property then in its hands as bailee. It had not purchased and was not bound to purchase the property. "A bailment with an option on the part of the bailee to buy is merely a bailment. If, however, the bailment is coupled with an agreement by which the bailee is bound to buy, the transaction will be deemed a conditional sale." [35 Cyc. 655, 656.] To the same effect is the opinion of this court in Strauss Saddlery Co. v. Kingman & Co., 42 Mo. App. 208.

Appellant lays some stress upon the following clause of the "contract" upon the back of the instrument under discussion: "Should the undersigned become insolvent, make an assignment . . . sustain loss by fire or other casualty, transfer property or close out business . . . all obligations provided for in this contract or arising therefrom, shall become due and payable at once, or at any time thereafter, at your [plaintiff's] option . . ." But this clause, we think, cannot have the effect which appellant seeks to give to it. Its evident purpose is merely to *mature* any obligation "provided for in this contract or arising therefrom." It creates no obligation whatsoever. And inasmuch as the contract places no obligation upon the Mercantile Company such as is here sought to be enforced, this clause cannot affect the question before us.

Our conclusion is that this record discloses a "bailment for sale," and not a "conditional sale." [See Piano Company v. Williams, 167 Mo. App. 515, 151 S. W. 211; In re Columbus Buggy Company, supra.] The fact that the Mercantile Company paid the freight, and was authorized to fix its selling prices, retaining the difference between the agreed prices for which it was to account to plaintiff and its own selling prices, as its

compensation and to cover expense, does not make the contract one of sale. [Piano Co. v. Williams, supra.]

It follows that plaintiff made no prima-facie case for the recovery of the purchase price alleged to be due and payable to it, and that the trial court properly sustained the demurrer offered by defendants. The judgment is therefore affirmed. *Reynolds, P. J.,* and *Nortoni, J.,* concur.