GLOBE SECURITIES COMPANY, a Corporation, Appellant, v. GARDNER MOTOR COMPANY, INC., a Corporation, GARDNER-PAUP MOTORS, INC., a Corporation, and MOTOR BROKERAGE SALES COMPANY, a Corporation.—85 S. W. (2d) 561.

Division One, July 9, 1935.*

*NOTE: Opinion filed at September Term, 1934, April 17. 1935; motion for rehearing filed; motion overruled at May Term, July 9, 1935.

*Harry Jenkins, Jenkins & Vance, S. L. Trusty* and *Trusty & Pugh* for appellant.

*Atwood, Wickersham & Chilcott* for respondent.

HAYS, J.—Gardner Motor Company, Inc., of the city of St. Louis, a manufacturer of automobiles, delivered products of its factory from time to time to Motor Brokerage Sales Company (which by change of name became Gardner-Paup Motors, Inc., and for brevity will be referred to as sales company), as distributor in the Kansas City trade territory, and as local dealer in automobiles at Kansas City.

This action involves five of such cars, each delivered and received under so-called trust receipts. Some time after such delivery the sales company, without benefit to and without the knowledge or consent of the Gardner Company, gave the plaintiff, Globe Securities Company, chattel mortgages on these particular cars to secure various sums of money borrowed thereon, the instruments being in conventional form and authorizing the mortgagee to take possession of the property on default and sell same to pay the indebtedness secured. The mortgagor defaulted in its payments, and the Gardner Company, upon its first information of the existence of the mortgages, asserted its claimed right of absolute ownership and title to the cars by repossessing and taking them to its factory in St. Louis, where it retained them against the plaintiff's demand therefor, and plaintiff's asserted right to possession thereof and of superior title thereto under said mortgages. Whereupon this action was brought as for trover and conversion.

In a trial before the circuit court without a jury the defendants (respondents here) prevailed, and from the judgment the plaintiff appealed. The value of the property involved, as well as the amount of damages prayed, gives this court jurisdiction of the appeal. The pleadings embraced the issues which were tried and decided, and require no further notice.

Upon the conclusion of all the evidence and at the request of the parties, the trial court made in writing, separate from and before judgment rendered, certain findings of facts and conclusions of law.

I. The record is challenged by counsel for respondents on the ground that exceptions to the findings, though taken at the time, were not preserved in the motion for new trial which was filed. It is true that the motion makes no specific mention of said findings or conclusions. However, in the case at bar the evidence was preserved in a bill of exceptions which is presented in the printed record. In several forms of statement the motion for new trial charges that, "The judgment is against the facts and against the law." We think the condition of this record is such as to present for review the question whether on the disputed facts shown in the evidence the judgment is sustained by the law. [Municipal Securities Corp. v. Kansas City, 265 Mo. 252, l. c. 265, 177 S. W. 856; Ward v. W. U. Telegraph Co., 226 Mo. App. 752, 46 S. W. (2d) 268; 26 R. C. L., p. 1094.]

In the Municipal Securities Corp. case, supra, in which an exception record similar to this was involved, the court said: "We may not weigh the evidence. . . . We may only look and see if there be any substantial evidence whatever in the case, which, when applied to the case made by the pleadings will, as a matter of law, permit this judgment to stand. . . . The facts are neither con-

tradicted nor disputed. The dispute is alone upon the legal effect of the facts.'' This court reviewed the evidence.

The counsel insists, however, that in the pleadings there were disputed issues, namely as to: whether respondent sales company customarily mortgaged cars held under trust receipts; whether it was customary for cars on said company's sales floor to bear *indicia* of ownership; whether the Gardner Company had knowledge that the sales company was mortgaging cars; and whether, at the time it took the cars which are in suit, the Gardner Company agreed to pay plaintiff's mortgage indebtedness. The record shows that each and all of said issues were disproved. Appellant in its brief has specifically abandoned them all. And the court found against all. Hence these issues and the evidence pertaining to them are of no avail to plaintiff and will be disregarded. The remainder of the evidence is not disputed and only the legal effect thereof is controverted. Much of it was stipulated, and practically all was included in the court's findings. In Murphey v. Weil, 89 Wis. 146, it is said that a fact established by undisputed evidence may be treated, for the purpose of review, as equivalent to a finding thereof formally incorporated into a special verdict, and facts so established go to support or defeat the special finding, or the judgment founded on it, whether they are formally incorporated in the findings or not.

II. On October 21, 1927, the sales company entered into written contract with the Gardner Company for the handling and selling of Gardner cars as its distributor in the Kansas City sales territory. The substance of this contract and memorandum thereto attached will be stated later.

The five cars which are the subject of this litigation were delivered under trust receipts on various dates in 1928, the first on April 26. On each of the several shipments of the cars in controversy the Gardner Company, the then owner, shipped same by railroad from St. Louis, consigned to the order of the Gardner Motor Company at Kansas City, with instructions to notify the sales company of arrival of the cars, and sent the bill of lading and invoice covering each car, and trust receipt, with instructions to the Commerce Trust Company to deliver the bill of lading to the sales company upon the execution of the trust receipt. The trust receipts were executed by the sales company and the bills of lading delivered to it, and the sales company paid the freight and obtained possession of the cars. The trust receipts are set out in full in said findings, and their tenor will be given in another connection. After the several shipments and the execution of the trust receipts, and in December, 1928, new trust receipts in identical language were executed in lieu of the former. This was done to enable the Gardner Motor Company to freshen its statement for the banks with which it dealt. Later, on the tenth of April, 1929, and

again on December 15, substitute trust receipts were executed in like form and language as the previous ones, except that the sale prices in the last were changed—in one instance reduced and in the others increased—and supplanted the previous substitutes. None of the trust receipts was recorded. The chattel mortgages were executed and immediately recorded between the time of delivery of the second, and the execution of the last set of substitute trust receipts.

The primary propositions laid down in appellant's brief, and on which the appellant relies for a reversal of the judgment, are these: (1) The trust receipts were of such a nature as to require them to be recorded; (2) that said instruments and the course of dealing between the parties thereto created an interest in the sales company that could be mortgaged; (3) that even if the trust receipts were valid, though unrecorded, yet when the second set of receipts was supplanted by the third set, the chattel mortgages became superior to the third; (4) that the Gardner Company is estopped from claiming any rights superior to those of the appellant; and (5) that the trust receipts constituted the sales company a trustee with power to mortgage and sell.

The respondents controvert each of these propositions and contend that the automobiles were merely held upon consignment, title always remaining in the Gardner Motor Company; that the relation between the sales company and the Gardner Company was that of factor and principal, and that the factor had no right to mortgage the cars.

Appellant's first, third and fifth points may be considered together as they alike are bottomed upon the contention that the trust receipts constituted chattel mortgages or chattel deeds of trust through the operation of Section 3097, or conditional sales under the governance of Section 3125, Revised Statutes of 1929 (Laws 1877, p. 321). If they were mortgages or deeds of trust they were invalid under Section 3097 as against subsequent encumbrances taken in good faith without notice, because possession of the property was not delivered to and retained by the mortgagee or trustee or *cestui que trust* nor the instruments acknowledged and recorded or true copies filed of record. If they were conditional sales, they were likewise invalid as against such encumbrances, under Section 3125, for if personal property be sold . . . or delivered to another with the title of the property so disposed of retained by the owner, and conditioned to pass to the other on the payment of a sum certain, or the value of the property, such conditions must be evidenced by writing executed and placed of record as provided in cases of mortgages of personal property.

III. It is respondents' contention that the trust receipts are plain and unambiguous and are to be construed upon their contents only,

while the appellant's insistence is that they are to be considered in the light of the facts surrounding their execution and also in connection with the provisions of the agency contract and a certain memorandum attached thereto and the invoices. If the receipts be found unequivocal, we should be disposed to agree with respondents' contention in this respect. [23 R. C. L., p. 1216.] But the proper interpretation of the receipts may or may not be aided by extrinsic evidence, as may be discovered upon analysis of the other instruments just referred to. It is said by the annotator of a standard work (17 A. L. R., p. 1421, Ann.), in relation to contracts the apparent object of which is to reserve title to the owner notwithstanding the change of possession, that "the courts look to the purpose sought to be attained by the contract, and to the surrounding facts and circumstances, and construe it in accordance therewith, as well as in harmony with the general cases applicable to the rights enjoyed and obligations imposed by it." We shall, then, take these extrinsic matters in their own order and consider, in connection therewith, the contentions made with regard to them.

The sales contract provided that prices on cars and parts were to be f. o. b. St. Louis, and orders therefor would under no circumstances be subject to cancellation; that all shipments of automobiles were to be made sight draft against bill of lading; that if either party should cancel the agreement then the Gardner Company should have the privilege of purchasing, at cost to the sales company, any unused cars which the latter might have on hand unsold; and that the agreement should not in any respect make the sales company an agent for the Gardner Company.

Attached to said contract was the memorandum mentioned above, of the same date. This instrument dealt with car parts and cars theretofore and then kept in the Gardner Company's branch sales establishment at Kansas City and was made with a view to an early closing of the branch establishment. The memorandum provided for the Gardner Company's transfer of the parts business and for the disposal by individual sales of cars there on hand. Paragraphs 6 and 7 of the memorandum are the parts upon which the appellant lays stress. Paragraph 6 extended to the sales company the privilege of selling cars at said branch "on the regular distributor basis, provided payment in full for the cars is made before car is removed from the branch premises." Paragraph 7 provided that cars at the branch, not to exceed 12, remaining unsold on November first, would be transferred to the sales company store under mortgage and trust receipt in favor of the Gardner Company and sold on a regular distributor basis as per paragraph 6.

The invoices were headed "Sold to Motor Brokerage Sales Company, Kansas City, Missouri, . . . terms net cash payable in St.

Louis or New York exchange." Said invoices bore this stamp: "The car mentioned in this invoice is covered by trust receipt dated . . . in the amount of . . . Gardner Motor Company, Inc."

It is, in effect, argued for the appellant that the provisions of the memorandum are in contradiction of the negation of agency as contained in the contract and that, with respect to the sale of the twelve cars, converted the transaction into a conditional sale or a mortgage, and that the contract as amended by the memorandum governed all future transactions between the parties. If it be granted (as it is argued) that, if the twelve cars had been delivered from the branch under the provisions of the memorandum, the transaction would under our statutes have been a conditional sale, or a mortgage, none the less we think that the memorandum, having served its sole purpose, could serve no similar future purpose, and the sales contract, to which the privilege granted formed a mere isolated exception, was no longer affected by the memorandum. The essence of the sales contract was that the sales were to be absolute and for cash on bills of lading with sight drafts attached. There was nothing else to them in so far as they concerned the delivery or transfer of automobiles and the terms thereof. If they were later changed in this the essential part, subsidiary parts inherently connected with this part would by necessary implication become inoperative if incompatible with the change made. This observation is applicable to that provision in the sales contract which authorized the Gardner Company to repurchase cars unsold as well as to the provision negating agency. In the first provision of said contract the right was specifically reserved to the Gardner Company to change the terms of that instrument at will and without notice. The parties did cease to follow it after some months. It may be fairly inferred that the time came when in all their mutual dealings the trust receipt was employed exclusively—a method which, as will appear, is diametrically opposed to the former, and evidently complete in itself. It inferentially appears that the change was due to the inability of the sales company to follow the sales contract plan for want of capital. The trust receipt method was followed throughout their subsequent dealings, with the result that the sales company so held some thirty or forty Gardner automobiles when the alleged conversion occurred.

The appellant argues next that the notations "sold" and "covered by trust receipts," appearing in the invoices, are like unto a recital in a conveyance of property to the effect that the property "is subject to" a specified encumbrance; in other words, that the original contract, the invoice and the receipt make a sale subject to the receipt as security for the purchase price. To this we do not agree.

In Dows v. National Exchange Bank, 91 U. S. 618, 620, it is said: "The position . . . that the transmission of the invoices passed

the property in the wheat without the acceptance and payment of the draft drawn against it, is utterly untenable. ... . .. It is a mere detailed statement of the nature, quantity, cost or price of the things invoiced, and it is as appropriate to a bailment as to a sale. . . . Hence, standing alone, it is never regarded as evidence of title. (Cases cited.)'' [See, also, Sturm v. Boker, 150 U. S. 312, 326, and Kingman Plow Co. v. Joyce, 194 Mo. App. 367.] .

From these considerations it is our conclusion that said sales contract, memorandum and invoices, whether considered singly or collectively, furnish no aid to the proper interpretation or legal construction of the trust receipts in question.

IV. The trust receipts are now to be considered from their four corners. It appears therefrom that the sales company agreed ''to store, warehouse and hold the automobiles in trust for the said Gardner Motor Company, Inc., as its property, and to return same on demand, : . . but with liberty to exhibit and sell same *for cash for*'' a specified sum ''for the account of said Gardner Motor Co., and in the event of sale to immediately pay over to said Gardner Motor Co., Inc., the sum specified above; to keep a separate account of the motor vehicles received under this or any like receipt and of the proceeds thereof when sold, to report to Gardner Motor Co., Inc., any sale thereof immediately after same is made, and to furnish on the first of each month a true and complete report for the preceding month showing the exact number of motor vehicles on hand held by the sales company under this or similar receipt or receipts,'' etc.

It has been shown that these instruments constituted a complete and exclusive plan for dealing with the property which they purport to affect. If they present a double aspect of agency and sale, this court should determine the question of agency or sale as the characteristics of the one or the other predominate (Mechem on Agency (2d), sec. 2499), though not all characteristics have the same weight or force. [63 A. L. R., pp. 364-5.] These distinguishing characteristics are laid down in Ruling Case Law, wherein it is said:

''A consignment of personal property for sale by the consignee as agent for the consignor does not change the title to the property,'' or bring the same within the conditional sales statutes. [Vol. 23, pp. 1214-1215.] ''The mere fact that a price is fixed for which the consignee is to account on the sale of the goods does not render the transaction a sale. In such a case, if the only liability which could arise on the part of the consignee is to pay the consignor the amount fixed on as the price when the goods should be sold, and the proceeds collected, the consignee's compensation being determined by the amount he may receive over the fixed price, the transaction is considered a consignment for sale and not a sale; but the fact that the consignee is

given full dominion to dispose of the goods to whomsoever and for such price as he may choose is a material consideration tending to show that the transaction constituted a sale. The retention by the consignor of the title to the proceeds of sales by the consignee is inconsistent with a sale and evidences rather a consignment for sale or agency contract. The same is true where the consignor retains the right to demand at any time a return of unsold goods, and conversely if he does not retain such right it strongly tends to show that the transaction was a sale. A provision expressly reserving title to the consignor has been considered as tending to show that the transaction was a sale, for a provision of this character is not essential if the contract is one of consignment or agency, since the title remains in the principal as a matter of course. Still, such a provision does not necessarily render the contract a sale instead of a consignment, because the agreement as a whole may show that it was the intention to create only an agency for sale.'' [Id., sec. 34, pp. 1216-1217.]

It has been said that the feature which vitally distinguishes conditional sale from consignment is that in the former the purchaser undertakes an absolute obligation to pay for the property, whereas the latter is nothing more than a bailment for sale. [In re Sachs, 31 Fed. (2d) 799.] In the instant case no such obligation was assumed. In the case of a chattel mortgage the security is dependent upon the title, and the instrument must contain a defeasance clause. In the case of a trust receipt, title has never been taken in the debtor, and consequently he cannot convey such title back to the holder of the trust receipt. In the last mentioned the title remains in the party secured, while the possession is entrusted to one who has a certain interest as yet indefinite in the property. [In re James, Inc., 30 Fed. (2d) 555, 557.]

Upon examination of the instruments in suit it seems plain enough that there was no obligation imposed on the sales company either to pay or to secure a purchase price, nor did any title pass to the sales company to support a chattel mortgage back. Neither do the agreements contemplate that the title should be so passed from one of the parties to the other at any time. The title is to pass only if and when sales may be made by the sales company and to pass then from the Gardner Company to the customer. [Sturm v. Boker, 150 U. S. 312, 14 Sup. Ct. 88, 37 L. Ed. 1093; In re Taylor, 46 Fed. (2d) 326.] So that, measuring the receipts by the preceding tests we are of the opinion that they constitute bailment or agency for sale. It would seem that these instruments were forms adapted to use, and ordinarily used by importers and finance companies as security in transactions essentially dissimilar to those here under review. The obligations imposed on the parties by the agreements under consideration are practically the same as the law pertaining to factorage would

imply from a mere oral agreement between the parties made in the same manner and looking only to the possession and sale of the property on commission and the accounting for the proceeds. In such case the title of the consignor is necessarily reserved. The consignee is under no obligation to pay a price, but is clothed with the possession of the property and the authority to sell. Also, under the law, the consignee is a trustee for the consignor. [Mechem on Agency, (2 Ed.), p. 2170.] The provisions "to hold in trust" and "as its property" are without legal significance as used in the instruments under review, and lend no force thereto save as emphasis upon two constituent features of consignment, since there was no purchase price to be secured and consignment, not sale, was intended. [Fuller v. Smedley, 44 S. W. (2d) 131.]

From these considerations we are of the opinion, irrespective of the denomination of said contracts as trust receipts, that they are governed by common-law principles, of which the following cases, among many others, are exponent and which impel the conclusion that respondent Gardner Motor Company at the time of regaining possession of the automobiles in question and at the time this action was instituted, had and thereafter held the legal title to the same, and that said contracts were not affected by our conditional sales statutes. [Sturm v. Boker, 150 U. S. 312; In re Bell Motor Company (C. C. A. 8th), 45 Fed. (2d) 19; In re Columbus Buggy Co. (C. C. A. 8th), 143 Fed. 859; Kingman Plow Co. v. Joyce, 194 Mo. App. 367, 184 S. W. 490; Packard Piano Co. v. Williams, 167 Mo. App. 515, 151 S. W. 211; Ferd Heim Brewing Co. v. Linck, 51 Mo. App. 478; Cable Co. v. Elliott (Mo. App.), 203 S. W. 211, 17 A. L. R. 1439.]

Bell Motor Company case is worthy of special note, as there the Circuit Court of Appeals for the Eighth Circuit had occasion to determine whether the trust receipts upon which the decision depended were in the nature of conditional contracts or chattel mortgages, and whether, not being recorded, they were void as against creditors, under the conditional sales statute of Missouri (present Sec. 3125). The instruments were of similar tenor to those just now reviewed, except in one particular to be noted. The Court of Appeals, following like rulings made in John Deere Plow Co. v. McDavid (C. C. A. 8th), 137 Fed. 802, 810, and Met. Natl. Bank v. Benedict Co., 74 Fed. 182, held (p. 23) that no title to the automobiles involved passed to the trustee and that the trust receipts were contracts of consignment for sale, and, therefore, not affected by said statute. Said receipts were executed by the dealer as trustee to secure to a trade acceptance corporation the proceeds of the dealer's future sales for the payment of trade acceptances signed by the dealer and held by a trade acceptance corporation. Also, the Kingman Plow Company case, supra, is specially pertinent as it bears a close similarity to the case at bar in most respects.

Appellant insists that, on the whole record, the trust receipts are conditional sale contracts, and that they are merely a form of security for the benefit of the Gardner Motor Company. Upon a careful consideration of the authorities cited in appellant's brief on the controversial questions here, we find that most of the cases cited are from foreign jurisdictions, and none of them is deemed persuasive upon this question of construction. So far as pertinent they appear to be influenced by conditional sales statutes broader and more inclusive than ours; among them Factor's Acts in many of the states, designed for the very purpose of affecting contracts of factorage, which otherwise would be controlled by common-law principles, and requiring their recordation as a condition to their validity as to persons other than the parties to the same. It seems safe to say that most of said citations are of cases in which the contracts construed appear to cover transactions in which the title was reserved as security for money loaned, or advanced, or as the deferred purchase price, and which are construed, in respect of the transactions involved, to be conditional sales or absolute sales with chattel mortgage back. Those of them here noted are thought to be representative of the others. [Texas Bank & Trust Co. v. Teich, 283 S. W. 552; In re Bettman-Johnson Co., 250 Fed. 657; Clark v. Flynn, 199 N. Y. Supp. 583; Carrollton Acceptance Co. v. Wharton (Tex. Civ. App.), 22 S. W. (2d) 985; Kolb v. Baking Co. (Mo. App.), 9 S. W. (2d) 840; Commonwealth Finance Corporation v. Schutt, 116 Atl. 722; Industrial Finance Corp. v. Capplemann, 284 Fed. 8, 17 A. L. R. 1421.]

V. In passing to the question of the result which our announced holding in respect of the trust receipts should have upon the chattel mortgages in question, it is appropriate to interpolate that the interpretation which we have placed upon the original receipts necessarily determines that the substitute receipts have become a matter of no consequence; that all the receipts were without effect upon title, since from the beginning of the transactions, and throughout, the title was in the Gardner Motor Company. It follows that the mortgages were of no legal effect as against said company. The question of the latter's right to rely upon that proposition is now for consideration, and in respect of that matter the appellant contends that said company is estopped by reason of its conduct in the premises.

The burden of proof of estoppel rested upon the appellant. The oral evidence relative to it is not before us, as stated in paragraph I. The evidence touching that matter, being on a controverted issue, was necessarily included in the court's finding of facts and, conversely as regards undisputed facts, exceptions to findings on controverted facts must be preserved by motion for new trial to be reviewable on appeal. [Burgess v. Insurance Co., 114 Mo. App. 169, 186-187, 89 S. W. 586.] In this State the rule at common law obtains

that an agent authorized to sell goods on commission has no implied power to barter or exchange them, or to pledge them for his own debts. [Wheeler & Wilson Mfg. Co. v. Givan, 65 Mo. 89.] This rule is somewhat more broadly stated in Chase-Hackley Piano Co. v. Clymer (Tex.), 202 S. W. 214: "A pledge or mortgage of property held by the factor for sale, made by the factor to secure his individual indebtedness, could not be enforced against the owner of the goods, though the pledgee or mortgagee had no notice of the fact that the factor did not in fact own the goods, and took the mortgage or pledge on the faith of his belief that the factor was the owner, unless the owner of the goods, by some acts other than the mere delivery of the possession of the property to the factor, had estopped himself from denying the right of the factor to treat the goods as his own." [Citing: McCreary v. Gaines, 55 Tex. 488, 492, 40 Am. St. Rep. 818; Renfroe v. Hall, 202 S. W. 218; Warner v. Martin, 11 How. 209, 13 L. Ed. 673; Mechem on Agency (2 Ed.), secs. 2509, 2511, 897; 11 R. C. L., p. 761; 2 C. J. Agency, sec. 68.]

Under the views expressed hereinabove it follows that there is no estoppel in the case, and that the Gardner Company's title and right to the possession of the automobiles in suit is superior to any rights of the appellant under said mortgages, as the trial court correctly found and decided. The judgment is affirmed. All concur.