L. S. TAUBE et al., Appellants,

v.

John INGRAHAM, Trustee in Bankruptcy of Mace-Ryer Appliance and Furniture Company, Bankrupt, Appellee.

No. 16595.

United States Court of Appeals Eighth Circuit.

May 10, 1961.

James E. Lockwood, Kansas City, Mo., for appellants; J. John Gillis and Brenner, Wimmell, Ewing & Lockwood, Kansas City, Mo., on the brief.

I. I. Ozar, Kansas City, Mo., for appellee.

Before VOGEL and BLACKMUN, Circuit Judges, and BECK, District Judge.

VOGEL, Circuit Judge.

Mace-Ryer Appliance and Furniture Company, a corporation, was adjudicated a bankrupt on October 15, 1959. John Ingraham became trustee in bankruptcy.

The appellant Commerce Finance Company, a partnership engaged in the business of financing dealers in the purchase of appliances, etc., filed a petition for reclamation of certain specific items of property in possession of the bankrupt. Right to reclamation was based upon instruments designated "trust receipts".[1]

I. The following is a sample:

"Invoice #76666

Account No. 725   Trust Receipt No. 28

Trust Receipt

June 12, 1959
(Date)

from

September 12, 1959
(Due Date)

Mace-Ryer Company,    of 4614 Prospect Ave.,    Kansas City
(Name of Dealer)         (Street Address)       (City or Town)
Missouri,          herein called 'Trustee,'
(State)

To

Commerce Finance Company, of 416 Railway Exchange Bldg., Kansas City 6, Missouri, herein called 'Entruster'. A security interest in the following described merchandise, with all attachments and equipment as a component part thereof, herein called 'Merchandise,' has passed to Entruster, for new value:

| Manu-facturer | Kind of Merchandise | 10% | Model | Serial No. | Release Price | Date Paid |
|---|---|---|---|---|---|---|
| Bassett | Chest-Dresser-Mirror—4/6 Book-case Bed-R*als* | 13.32 | 9500–9501 | | 119.88 | |
| Belz | | | | | | |
| " | 2 Pc. Set | 14.12 | 129 | Champagne | 127.08 | |
| " | 2 Pc. Set | 12.26 | 2331 | Aqua | 110.34 | |
| Delker | 2 Pc. Set | 12.26 | 2311 | Toast | 110.34 | |
| " | 4/6 Bed-Rails | 2.04 | 800 | | 18.36 | |
| " | Chest | 3.11 | 802 | | 27.99 | |
| Gaines | Double Dresser-Mirror | 4.36 | 804 | | 39.24 | |
| " | 3 Pc. Sectional | 11.87 | 1531–A | Brown | 106.83 | |
| " | 3 Pc. Sectional | 11.87 | 1531–A | Beige | 106.83 | |
| " | 3 Pc. Sectional | 14.13 | 1631 | Brown | 127.17 | |
| Bassett | 2 Pc. Sectional | 12.15 | 1910 | Beige | 109.35 | |
| " | Night Stand | 1.78 | 1640 | Limed Oak | 16.02 | |
| " | " | 1.78 | 1640 | " | 16.02 | |
| " | " | 1.78 | 1640 | " | 16.02 | |
| Bassett | " | 1.78 | 1640 | " | 16.02 | |
| | | 118.61 | | | 1067.49 | |

(Printed statement in
left-hand margin:)

Property In Trust
Take Notice: No one has
the authority to vary the
terms of this Trust Receipt

(Hand-written statement
across front:)

Renewed 9/21/59
By Trust Receipt #28a
Commerce Finance Co. by
(initial illegible)
Trustees Ex 18
12–1–59  AR

Trustee agrees to hold said Merchandise in trust for Entruster, and agrees to deliver all or any of said Merchandise to Entruster, in good order, complete and unused, upon demand. Trustee's possession of said Merchandise hereunder is for the purpose of the sale thereof at retail, in the regular course of business. Entruster, at any time, may examine said Merchandise and the books and records of Trustee with reference thereto. Trustee shall not lend, rent, mortgage, pledge, encumber, operate, use or demonstrate said Merchandise, but shall move said

**290**

When the bankrupt wished to order merchandise from the distributor, Lee Wholesale Company, it would place an order with Lee. Lee would make out an in-

Merchandise at Trustee's risk and expense from the place where delivery or custody thereof is taken, directly to Trustee's place of business, where Trustee shall keep the same properly housed, without expense or liability to Entruster, and free from all claims for taxes, liens or other encumbrances. Trustee, upon consent of Entruster, will sell said Merchandise for not less than the release price set opposite each item of the above mentioned Merchandise, providing that immediately after sale, Trustee shall deliver to Entruster from the proceeds of said sale the amount of said release price. Until such delivery, Trustee shall hold the entire proceeds in trust for Entruster, separate from the funds and property of Trustee. If Trustee fails to sell said Merchandise by due date, as shown above, or within any extended periods agreed upon in writing, or breaches this Trust Receipt, or if any proceeding in bankruptcy, reorganization, insolvency or receivership be filed by or against Trustee, or if any execution or writ be levied on the chattels described herein or on any of the property of Trustee, or if Entruster deems any part of said Merchandise or its security interest therein insecure, Entruster may take posssesion of said Merchandise without notice or demand and, for such purpose, it or its representatives may enter any premises without legal process. In any such event, Trustee's interest in said Merchandise may be forfeited, at the election of Entruster, and Entruster and Trustee also shall have such other and further rights as may be provided by law.

Trustee, unless otherwise agreed, shall keep said Merchandise insured against the hazards of fire and theft, while held by Trustee hereunder. Waiver of any breach or default in any prior transactions or hereunder shall not operate as a waiver of subsequent breaches or default hereunder, but all rights hereunder shall continue notwithstanding any one or more waivers in any prior transactions or hereunder. Trustee acknowledges receipt of a true copy of this Trust Receipt.

Mace-Ryer Company—Kansas City, Missouri
(Dealer-Trustee)

X...................................
     (Witness)               By X. H. Jantsch
                             (Owner, Partner, Officer or Attorney-in-Fact)

...............................................................................

Kansas City,   Missouri   June 12, 1959
(City or Town)   (State)     (Date)

Three months after date, Undersigned promises to pay to the order of COMMERCE FINANCE COMPANY the sum of One thousand sixty-seven dollars & 49/100 .......... Dollars ($1,067.49), payable at the office of Payee at Kansas City, Mo., together with interest after maturity at the highest legal contract rate. Undersigned hereby irrevocably authorizes any Attorney-at-Law, Clerk of Court or Prothonotary to appear for Undersigned after the maturity hereof in any Court of Record in any State of the United States, where this note may be held at or after maturity, or in any State in the United States where any of the makers or endorsers may reside or have property or any right, title, interest or claim in any property, in term, time or vacation or before any Justice of the Peace in any of the states aforesaid, and to waive the issue and service of process and confess a judgment against Undersigned in favor of the holder hereof for such amount as may appear to be unpaid hereon, after maturity, costs and 15% of the amount appearing unpaid hereon for collection expenses, which Undersigned agrees to pay and to release all errors and waive all right of appeal.

All benefits of valuation, appraisement and exemption laws are hereby waived. Presentment, demand, protest and notice of protest and non-payment are hereby waived.

Value Received.

Dealer    Mace-Ryer Company—Kansas
            City, Missouri

Distributor Lee Wholesale Company
By     H. Jantsch               By X    H. Jantsch
   (Owner, Officer or Firm            (Owner, Officer or Firm
       Member)                    Member)"

voice showing the merchandise "sold to Commerce Finance Company" and "ship to Mace-Ryer". Lee would also prepare a trust receipt covering the items to be shipped to Mace-Ryer. The trust receipt and a promissory note, in the amount of 90% of the purchase price of the merchandise, would be executed by Mace-Ryer, with Lee Wholesale signing as co-maker on the note. Sometimes Lee would execute the instruments for Mace-Ryer under a power of attorney given for that purpose. The original notes called for payment within 90 days. When the trust receipts and promissory notes were delivered to Commerce Finance, the latter in turn would pay 90% of the purchase price to Lee Wholesale. The bankrupt, Mace-Ryer, would, upon receiving the goods, pay the remaining 10% of the purchase price to Lee Wholesale. From time to time the bankrupt would make remittances to Commerce Finance and as such remittances came in Commerce Finance would strike off the items of merchandise for which payment was made. At the end of 90 days a new note and trust receipt would be prepared covering any unpaid balance. These renewal notes, also co-signed by Lee Wholesale, would be for an additional period of 30 to 60 days. Upon receipt of the renewal trust receipt and the renewal note, Commerce Finance would return the original note and trust receipt to Mace-Ryer.

Apparently when Commerce Finance reached a point beyond which they would no longer extend time for payment, they would stamp the last renewal papers as follows: "Last Renewal—Must be Paid In Full When Due." None of the trust receipts was ever filed for record.

During the period when the trust receipts were outstanding, credit was extended to the bankrupt on open account by persons and corporations who have now become general creditors of the bankrupt.

[1] The referee in bankruptcy denied the petition for reclamation, holding the "alleged trust receipts should have been filed or recorded" under the provisions of Section 428.100 R.S.Mo.1949, V.A.M.S., and accordingly were unenforceable liens as against the trustee in bankruptcy. The District Court, upon review, affirmed the action of the referee. This appeal followed. In consideration thereof we are, of course, bound by the law of the State of Missouri.

Section 428.100 R.S.Mo.1949, V.A.M.S., provides as follows:

"In all cases where any personal property shall be sold to any person, to be paid for in whole or in part in installments, or shall be leased, rented, hired or delivered to another on condition that the same shall belong to the person purchasing, leasing, renting, hiring or receiving the same whenever the amount paid shall be a certain sum, or the value of such property, the title to the same to remain to the vendor, lessor, renter, hirer or deliverer of the same, until such sum, or the value of such property, or any part thereof, shall have been paid, such condition, in regard to the title so remaining until such payment, shall be void as to all subsequent purchasers in good faith, and creditors, unless such condition shall be evidenced by writing executed, acknowledged and recorded as provided in cases of mortgages of personal property."

The District Court noted, first, that trust receipt financing

"* * * commonly known as the 'floor plan', has been in effect for a long period of time, and is well recognized in Missouri, and the transfer of property under such trust receipts does not come within the provisions of the statute requiring the recording or filing of documents. In re Bell Motor Co., 45 F.2d 19 (C.A. 8th 1930); Commercial Credit Co. v. Interstate Securities Co., 197 S.W.2d 1000 (K.C.Ct.App.1946); Globe Securities Co. v. Gardner Motor Co., [337 Mo. 177], 85 S.W.2d 561 (Mo. 1935)."

Holding that the question was whether or not the instruments with which we are

concerned were in fact trust receipts, the trial court, in sustaining the referee, concluded that the requirement of an absolute obligation to pay, such as the giving of promissory notes here,

"* * * takes the case out of the category of those covered by the decisions with respect to trust receipts, which hold that it is not necessary to file or record transactions covered by trust receipts, and that these transactions came within the provisions of said § 428.100 R.S.Mo. 1949 [V.A. M.S.]."

Admitting that Missouri does not have' a final authoritative ruling from the Supreme Court of Missouri covering the precise question presented on this appeal, i. e., whether the assumption of an absolute obligation to pay, such as the giving of a promissory note by the receiptor, destroyed the trust character of the transactions and brought them within the purview of the recording statute, the appellants nevertheless contend that the court was in error. Appellants' position is that the holding of the District Court constitutes a minority rule usually grounded upon biparty transactions or broader recording acts than Section 428.-100 R.S.Mo.1949, V.A.M.S., supra. Appellants contend that such view should not be followed in Missouri in a triparty transaction and that what they refer to as the dicta of the Supreme Court of Missouri in Globe Securities Co. v. Gardner Motor Co., Mo.1935, 337 Mo. 177, 85 S.W. 2d 561, 567, motion for rehearing overruled July 30, 1935, post, cited and relied upon by the District Court, should not be so construed.

Here it should be pointed out that Missouri has not adopted the Uniform Trust Receipts Act, now the law in some 35 of the states, which recognizes the trust receipts device as being *sui generis* and which has provision for the filing of a statement of trust receipt financing with the Secretary of State, thus providing for notice to subsequent creditors and dispensing with the applicability of recording generally.

While, as indicated, the precise question involved in this appeal has never been ruled on directly by the Supreme Court of Missouri or any of the intermediate Courts of Appeals, a review of Missouri cases insofar as they deal with trust receipts or were relied on or cited by the District Court is indicated.

The first such Missouri decision is Forgan v. Bridges, Mo.App.Springfield, 1926, 281 S.W. 134. Therein, the plaintiffs claimed automobiles under unrecorded trust receipts. Defendant's claim was bottomed on subsequent chattel mortgages on the same vehicles. The automobiles in question were originally owned by Spalding Motor Company of St. Louis and delivered by it directly to the dealer, Davison Brothers. The latter would pay 15% of the purchase price to Spalding Company upon delivery of the vehicles and sign a trust receipt and a time draft payable to plaintiffs for the balance. The trust receipt recited "Received of Spalding Motor Company, Inc., St. Louis, Mo., acting for Commercial Acceptance Trust, Chicago, Ill., the owner thereof * * *." The Springfield Court of Appeals, loc. cit. 135, held that the title to the automobiles passed to Davison Brothers when the machines were delivered to them; that there were no words of conveyance in the trust receipts, and that as they were not recorded and the defendant had no knowledge that they were in existence at the time he took the chattel mortgage under which he claimed, plaintiffs could not recover. The court stated, at page 136:

"* * * All we do hold is that as to Bridges, the mortgagee, the title was in Davison Bros. at the time his mortgage was executed; hence, as far as this case rests on the question of whether the actual title to the automobiles was in Davison Bros. or the plaintiffs at the time the mortgage was executed, Bridges must prevail over plaintiffs."

The next case dealing with Missouri law and cited by the trial court is from this court, In re Bell Motor Co., 8 Cir., 1930, 45 F.2d 19, certiorari denied Craig

v. Industrial Acceptance Corporation, 283 U.S. 832, 51 S.Ct. 365, 75 L.Ed. 1445, upon which appellants place considerable reliance. Therein the court stated, 45 F. 2d at page 24:

"If, as held by many of the authorities, the trust receipts created a bailment, the title being vested in the Industrial Acceptance Corporation and the possession in the Bell Motor Company, then confessedly they are not conditional sale contracts, and hence the Missouri statute with reference to recording would have no application to these instruments.

\*　\*　\*　\*　\*　\*

But there is another fatal weakness in appellant's contention. Even if these trust receipts should be construed to be in the nature of conditional sale contracts, and hence, under the Missouri law, subject to the recording statute above quoted, still the instruments were valid as between the parties and as to all the world except creditors of the bankrupt who extended credit during the time they were withheld from record. Bailey v. Baker Ice Machine Co., 239 U.S. 268, 36 S.Ct. 50, 53, 60 L.Ed. 275. In the instant case there was no claim in the lower court that these instruments were void because credit had been extended to the bankrupt by others while they were being withheld from record, nor was there any proof that there were any such subsequent creditors."

In the instant case there were intervening general creditors who extended credit to the bankrupt during the time the trust receipts were held by the appellant and not recorded. Additionally, in the Bell case it is to be noted that the distributor, Studebaker Corporation, did not act as a surety or guarantor in case of non-payment by Bell Motor Company, as was done by the distributor, Lee Wholesale, for the bankrupt in the instant case. Under the circumstances we feel that the Bell case lends little, if any, support to appellants' cause.

The Supreme Court of Missouri dealt with trust receipts in Globe Securities Co. v. Gardner Motor Co., supra. Therein the Gardner Motor Company shipped five cars to itself at Kansas City with bills of lading delivered to a local bank with instructions to deliver the cars to the dealer upon execution of trust receipts. The dealer mortgaged the automobiles to Globe Securities. Gardner Motor repossessed. Globe Securities contended that the transaction amounted to a conditional sale or chattel mortgage. The court concluded that the arrangement was a bailment or agency for sale and hence the recording statute was not applicable. In doing so, however, the court stated, 85 S.W.2d at page 567:

"*It has been said that the feature which vitally distinguishes conditional sale from consignment is that in the former the purchaser undertakes an absolute obligation to pay for the property, whereas the latter is nothing more than a bailment for sale.* In re Sachs, (D.C.) 31 F.(2d) 799. *In the instant case no such obligation was assumed.* \* \* \*

"Upon examination of the instruments in suit it seems plain enough that there was no obligation imposed on the sales company either to pay or to secure a purchase price, nor did any title pass to the sales company to support a chattel mortgage back. Neither do the agreements contemplate that the title should be so passed from one of the parties to the other at any time. The title is to pass only if and when sales may be made by the sales company and to pass then from the Gardner Company to the customer. Sturm v. Boker, 150 U.S. 312, 14 S.Ct. 99, 37 L.Ed. 1093; In re Taylor, (D.C.) 46 F.(2d) 326. So that, *measuring the receipts by the preceding tests,* we are of the opinion that they constitute bailment or agency for sale." (Emphasis supplied.)

In that case there was no obligation to pay and the Supreme Court of Missouri,

"measuring the receipts·by the preceding tests", including that which provided that an absolute obligation to pay distinguishes the conditional sale from a bailment for sale where no such obligation exists, concluded that a bailment or agency for sale existed, upholding the trust receipts as not coming within the purview of the recording statute. Here, indeed, is support for the District Court's conclusion that an absolute obligation to pay was contrary to the theory of trust receipts under the law of Missouri.

The last Missouri case touching on the subject is Commercial Credit Co. v. Interstate Securities Co., Mo.App.Kansas City, 1946, 197 S.W.2d 1000. In that case the Kansas City Court of Appeals upheld a trust receipt as against a subsequent recorded chattel mortgage covering the same automobiles. Therein, however, no promissory note was given and there was no absolute obligation on the part of the dealer to pay for the vehicles. Accordingly the·case is not decisive of the question herein. Appellants designate it, nevertheless, as "the springboard for the final pronouncement that a bailment is created in a tri-partite transaction when the dealer executes a note and obligates himself to pay a definite sum." In that case the court said at page 1004:

> "The decisions are not entirely in harmony as to the nature of trust receipts of the character involved in this proceeding, or their proper interpretation, whether they constitute conditional sales contracts, or, are, in their nature, chattel mortgages, or contracts of agency creating bailments. The holding in this state is that they are contracts creating bailments for sale and not in their nature chattel mortgages. Globe Securities Co. v. Gardner Motor Co., 337 Mo. 177, 85 S.W.2d 561; see, also, In re Bell Motor Co., 8 Cir., 45 F.2d 19."

The case is definitely not authority contrary to the District Court's conclusion that a trust receipt accompanied by an absolute obligation to pay comes within the purview of the recording statute.

We think the taking of the promissory notes, the renewals thereof, the notation on the face of the last trust receipt "Last Renewal—Must Be Paid In Full When Due" and the co-signing of the notes by Lee Wholesale Company spell out an absolute obligation to pay which is inconsistent with the theory of "bailments for sale" under Missouri law as referred to by the Kansas City Court of Appeals in Commercial Credit, supra. The pronouncement of the Supreme Court of Missouri in Globe Securities, supra, would indicate that in the instant case we are dealing with a conditional sales relationship, albeit the parties may have designated the instruments "trust receipts".

It is to be noted that other jurisdictions similarly hold that the presence of an absolute obligation to pay is fatal to a trust receipt classification and constitutes the transaction one of conditional sale. See 168 A.L.R. 365, 366.

Both parties quote from 53 Am.Jur., Trust Receipts, § 7. While not dealing with the law of the State of Missouri, it reflects general holdings of the courts of the several states when trust receipts are involved. After referring to the fact that the courts are not in agreement, the article states:

> "The title of·the holder of a trust receipt and its priority over creditors of the receiptor is recognized by many of the later decisions, although *there is a noticeable tendency in some of the more recent ones to disregard the form of the transaction in order to discover its essential purpose;* many courts have concerned themselves not so much with the question of who had strict legal title at the time the trust receipt was given, as with the question of who had the real ownership and interest in the property. *Obviously, in cases involving purchases by retailers from manufacturers and distributors, the finance company which advances money for the purchase does not intend to become the real owner of the property, but merely the holder of a security*

*title for the advances made. Accordingly, the conclusion has been reached in a number of cases that title passes directly from the seller, the manufacturer, or distributor to the dealer, and not to the financing agent, even though the trust receipt purports to vest the latter with title, the underlying theory being that the transaction was in the nature of a chattel mortgage.* In some of these cases, however, the transaction was bipartite, the title having passed directly from the seller to the dealer, who then gave a security title to the finance company." (Emphasis supplied.)

In looking behind the terms of the transaction and discovering its real purpose, the District Court was apparently following the trend of the more recent cases referred to above and. in doing so found strong support from the Supreme Court of Missouri in Globe Securities Co., supra. While perhaps not in accord therewith, Professor Vold, too, recognizes this recent trend of the cases. In Vold, Sales (2d. Ed. 1959), pp. 364–5, he speaks of the older rule that the security interest of the finance house prevails against subsequent purchasers or encumbrancers even though the trust receipt is not recorded. He notes, however:

" * * * True, greater emphasis on the mischief from secret liens in connection with merchants' inventories of shifting stock can lead to the opposite interpretation.

"Since 1930 or thereabouts this has happened in various more recent cases. To this end some courts have in effect disregarded the three-party arrangement as irrelevant. Purporting to look through the form to the substance, they have concluded that the deal amounted in substance to a mortgage. In that view it must be recorded, in order to prevail over purchasers or creditors * * *.

* * * * * *

"With reference to recording, this development has in substance been repeated for conditional sale recording acts.

" * * * Here, again, in more recent years, various courts have so interpreted facts or law as to hold conditional sale recording acts applicable. Reasons: The policy against secret liens in connection with dealers' inventories of shifting stock of merchandise."

The annotator in 87 A.L.R. 303 similarly observes:

" * * * The later decisions * * * show a tendency to disregard the form of the transaction, and to hold the title, at least for some purposes, to be in the receiptor * * *."

[2] Appellants here also contend that the trust receipts cannot come within the purview of the recording statute for the reason that the title to the merchandise did not remain in the "vendor" or "deliverer". Again, the argument is without force when the real nature of the transaction comes to light. Obviously this was a conditional sale between Lee and Mace-Ryer, with appellants acting as the financing agent. Here, also, as referred to in 53 Am.Jur., supra, " * * * title passes directly from the seller, the manufacturer, or distributor to the dealer, and not to the financing agent, even though the trust receipt purports to vest the latter with title * * *."

At the very most, appellants present a possibly doubtful question of local law. The trial judge, long experienced in Missouri law, arrived at a permissible conclusion which we will not disturb.

Affirmed.